2023-2093

# United States Court of Appeals
# for the Federal Circuit

---

**NATURE'S TOUCH FROZEN FOODS (WEST) INC.,**

Plaintiff-Appellant,

*v.*

**UNITED STATES,**

Defendant-Appellee.

---

Appeal from the United States Court of International Trade,
No. 20-cv-00131, Judge Stephen Alexander Vaden

---

**PRINCIPAL BRIEF OF PLAINTIFF-APPELLANT,
NATURE'S TOUCH FROZEN FOODS (WEST) INC.,**

---

John M. Peterson
   *Counsel of Record*
Richard F. O'Neill
Patrick B. Klein
NEVILLE PETERSON LLP
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

September 27, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**   2023-2093

**Short Case Caption**   Nature's Touch Frozen Foods (West) Inc. v. US

**Filing Party/Entity**   Nature's Touch Frozen Foods (West) Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/13/2023

Signature:   /s/ John M. Peterson

Name:   John M. Peterson

FORM 9. Certificate of Interest

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Nature's Touch Frozen Foods (West) Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)    ☐  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

~~PAGE~~

CERTIFICATE OF INTEREST ............................................................. ii

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES .................................................................iv

STATEMENT OF RELATED CASES ....................................................2

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF THE ISSUES.............................................................3

STATEMENT OF THE CASE ...............................................................3

SUMMARY OF THE ARGUMENT .....................................................11

ARGUMENT ....................................................................................13

I.    Standard of Review.....................................................................13

II.   The Frozen Fruit Mixtures are Not Properly Classified in Subheading 0811.90.80, HTSUS...................................................................14

III.  The Trade Court's Decision is Inconsistent with Canons of Statutory Interpretation.............................................................................24

    A.    The Decision is Inconsistent with *Noscitur a Sociis.* ..........................24

    B.    The Decision is Inconsistent with the Rules Regarding *Eo Nomine* Classification. ...................................................................26

    C.    The Lower Court's Ruling Disregards the Canon *Expresio Unius est Exclusio Alterius* ...............................................................29

IV.   The Merchandise is Properly Classified Under Subheading 2106.90.98, HTSUS..................................................................................31

V.    The Subject Mixtures Qualify for Duty-Free Entry as NAFTA "Originating." ..........................................................................39

CONCLUSION .................................................................................40

# TABLE OF AUTHORITIES

## Cases

*Airflow Tech., Inc. v. United States*, 35 C.I.T. 1540 (2011) ..................................12

*Alcan Food Packaging (Shelbyville) v. United States*, 771 F.3d 1364 (Fed. Cir. 2014)..................................................................16

*Amcor Flexibles Kreuzlingen AG v. United States*, 560 F. Supp. 36 1326 (Ct. Int'l Tr. 2022).................................................15

*Amoco Oil Company v. United States*, 749 F.2d 1576 (Fed. Cir. 1984). ......... 23, 30

*Arbor Foods, Inc. v. United States*, 30 C.I.T. 670 (2006) ......................................34

*BASF Corp. v. United States*, 482 F.3d 1324 (Fed. Cir. 2007). ...................... 12, 21

*Bell BCI Co. v. United States*, 570 F.3d 1337 (Fed. Cir. 2009) ..............................13

*Betz v. United States*, 6 Cust. Ct. 297 (1941)........................................................27

*Border Brokerage Inc. v. United States,* 64 Cust. Ct. 331 (1970)................. 22, 27

*CamelBak Products LLC v. United States*, 649 F.3d 1361 (Fed. Cir. 2011)..........14

*Carl Zeiss, Inc. v. United States*, 195 F.3d 1375 (Fed. Cir. 1999) .........................15

*Chemtall, Inc. v. United States*, 878 F.3d 1012 (Fed. Cir. 2017) ...........................18

*Drygel Inc. v. United States*, 541 F.3d 1129 (Fed. Cir. 2007).................................33

*E.M. Chems. Inc. v. United States*, 20 C.I.T. 382 (1996). ......................................21

*Franklin v. United States*, 289 F.34 753 (Fed. Cir. 2002) ......................................34

*Guess? Inc. v. United States*, 944 F.2d 855 (Fed. Cir. 1991) .................................13

*Jarecki v. G. D. Searle & Co.,* 367 U.S. 303 (1961) ..............................................25

*Jarvis Clark Co. v. United States,* 733 F.2d 873 (Fed. Cir. 1984). .........................14

*Jewelpak Corp. v. United States*, 24 C.I.T. 249 (2000)..........................................25

*La Crosse Technology, Ltd. v. United States*, 723 F.3d 1353 (Fed. Cir. 2013).....................................................................31

*Lemans Corporation v. United States*, 660 F.3d 1311 (Fed. Cir. 2011).................38

*Link Snacks, Inc. v. United States*, 742 F.3d 962 (Fed Cir. 2014)..........................14

*Lynteq Inc. v. United States*, 976 F.2d 693 (Fed. Cir. 1992) .................................13

*May Food Mfg. v. United States*, 33 C.I.T. 430 (2009). .........................................35

*Mita Copystar America v. United States*, 160 F.3d 710 (Fed. Cir. 1998). ....... 12, 38

*Mondelez Global LLC. v. United States*, 253 F. Supp. 3d 1329 (Ct. Int'l Tr. 2017)......................................................................33

*Nidec Corp. v. United States*, 68 F.3d 1333 (Fed. Cir. 1995). ...............................26

*Nissan Motor Mfg. Corp U.S.A. v. United States*, 693 F. Supp. 1183 (Ct. Int'l Tr. 1988)..........................................................30

*Orlando Food Corp. v. United States*, 140 F.3d 1437 (Fed. Cir. 1998)..... 15, 19, 34

*Otter Products LLC v. United States*, 70 F. Supp. 3d 1281 (Ct. Int'l Tr. 2015)......................................................................31

*P&G Mfg. Co. v. United States*, 16 Cust. Ct. 36 (1946)........................................27

iv

*P.R. Dreyer Inc. v. United States*, 4 Cust. Ct. 113 (1940) .......................................27

*Pustet & Co., v. United States*, 13 Ct. Cust. 530 (1926)........................................30

*Quong Yuen Shing Co. v. United States,* 31 C.C.P.A. 43 (1943) .............. 22, 27, 30

*R.T. Food, Inc. v. United States*, 36 C.I.T. 1637 (2012).........................................31

*Sabritas v. United States*, 22 C.I.T. 59  (1998)......................................................35

*Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158 (Fed. Cir. 2017) . 14, 25

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,* 776 F.3d
    1351 (Fed. Cir. 2015) ............................................................................ 24, 29

*Standard Chlorine Chem. Co. v. United States*, 13 C.I.T. 198 (1989)....... 21, 22, 30

*Stone & Downer Co. v. United States*, 17 C.C.P.A. 34 (1929). ............................35

*Texport Petroleum Inc. v. United States,* 185 F.3d 1291 (Fed. Cir. 1999).............35

*Toy Biz, Inc. v. United States*, 219 F. Supp. 2d 1289 (Ct. Int'l Tr. 2002) ..............16

*U.S.R. Optonix Inc. v. United States*, 29 C.I.T. 229 (2005)...................................30

*United States v. Lobsitz*, 16 Ct. Cust. 475 (1929). ......................................... 22, 27

*United States v. Mead Corp.,* 533 U.S. 218 (2001) ................................................14

*United States v. Wells Fargo Bank*, 485 U.S. 351 (1988) ......................................29

*Universal Elecs. Inc. v. United States*, 112 F.3d 488 (Fed. Cir. 1997). .................14

*Warner-Lambert Co. v. United States*, 407 F.3d 1207 (Fed. Cir. 2005) .................14

**Statutes**

19 U.S.C § 1504..........................................................................................................7

19 U.S.C. § 3004.......................................................................................................18

28 U.S.C. § 1295.........................................................................................................2

28 U.S.C. § 1581.....................................................................................................2, 8

28 U.S.C. § 2107 ........................................................................................................2

28 U.S.C. § 2639......................................................................................................14

28 U.S.C. § 2645.........................................................................................................2

**2023-2093**

# United States Court of Appeals
# for the Federal Circuit

---

**NATURE'S TOUCH FROZEN FOODS (WEST) INC.,**

Plaintiff-Appellant,

***v.***

**UNITED STATES,**

Defendant-Appellee.

---

Appeal from the United States Court of International Trade,
No. 20-cv-00131, Judge Stephen Alexander Vaden

---

**PRINCIPAL BRIEF OF PLAINTIFF-APPELLANT,
NATURE'S TOUCH FROZEN FOODS (WEST) INC.,**

Plaintiff-Appellant, Nature's Touch Frozen Foods (West) Inc., in accordance with Rules 28(a) and 32(a) of the Federal Rules of Appellate Procedure and the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, hereby submits its principal brief in this appeal.

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, counsel for Plaintiff-Appellant Nature's Touch makes the following statement:

1. Counsel for Plaintiff-Appellant are aware of the following action, currently pending in the U.S. Court of International Trade, which will directly affect or be affected by this Court's decision in the instant appeal: *Nature's Touch Frozen Foods (West) Inc.*, *v. United States*, Court No. 22-00042.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant, Nature's Touch Frozen Foods (West) Inc. ("Nature's Touch," "Plaintiff-Appellant," or the "Company"), appeals from the final decision of the U.S. Court of International Trade ("CIT" or "Trade Court") in Nature's Touch Frozen Foods (West) Inc., *v. United States*, Slip Op. 23-82, dated May 26, 2023. Appx1-Appx2.

Nature's Touch filed a timely notice of appeal on June 23, 2023, pursuant to 28 U.S.C. §§ 2107 and 2645(c) and Rule 4(a)(4) of the Federal Rules of Appellate procedure. The CIT possessed subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1581(a), and this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). The appeal was docketed in this Court on June 29, 2023.

## STATEMENT OF THE ISSUES

1. Whether the Trade Court properly determined that the imported frozen fruit mixtures were classifiable under subheading 0811.90.80, Harmonized Tariff Schedule of the United States ("HTSUS").

2. Whether the imported frozen fruit mixtures are properly classifiable under subheading 2106.90.98, HTSUS.

3. Whether the imported frozen fruit mixtures are entitled to duty-free treatment as "originating" products of Canada, pursuant to the North American Free Trade Agreement ("NAFTA").

## STATEMENT OF THE CASE

### I.    The Subject Merchandise.

The facts of the case are not in dispute. The merchandise at bar consists of various imported frozen fruit mixtures, packaged in distinct proportions according to specific recipes, and packaged for retail sale. More specifically, there are fourteen (14) frozen fruit mixtures at issue in this case. The specific compositions of the frozen fruit mixtures can be found at Appx58.

The various frozen fruits comprising the subject mixtures are initially grown, harvested and frozen in numerous countries, including the United States, Canada, and certain countries which were not signatories to the NAFTA, or its successor, the

United States-Mexico-Canada Agreement ("USMCA"). Appx62. The fruits contained in the subject mixtures arrive at Plaintiff-Appellant's Abbotsford, British Colombia facility already frozen and packed in bulk, with the exception of some United States-and Canadian-origin blueberries which arrive fresh and are frozen at Nature's Touch's Canadian facility.[1] Appx66. Regarding its receipt of frozen fruits in Canada, these products may be whole (*e.g.*, berries), in small pieces, or otherwise reduced in size (*e.g.*, chopped pineapples or melons), when received at Plaintiff-Appellant's Canadian facility.

Plaintiff-Appellant then combines the various frozen fruits into specific mixtures, pursuant to recipes prepared by the Company's Innovation Team, or by its customers. Appx130. To prepare the mixtures, frozen fruits housed in 30-pound crates are dumped into large hoppers, which typically hold roughly 1,000 pounds of material each. From these hoppers, the products are placed onto large scales attached to the Company's specialized filling machinery. Appx66-Appx67. The various fruits are then emptied in precise quantities from their respective hoppers into plastic retail bags which packaged the mixtures for retail sale. The printed bags are then sealed,

---

[1] For example, the regions of Canada and Washington State near Nature's Touch's British Colombia facility grow significant amounts of blueberries. Nature's Touch receives most of the blueberries it uses for its mixtures from this region. The blueberries are received in a fresh, non-frozen form. These blueberries will be frozen in a tunnel and separated with a laser at Nature's Touch's Canadian facility.

4

and laser printed with lot numbers for traceability, and prepared for importation and shipment directly to U.S. customers or for very short storage at refrigerated U.S. distribution facilities. Appx68.

While creating the mixtures, Plaintiff-Appellant performs extensive quality control and phytosanitary testing. Individual fruits, and fruit pieces, are required to meet specific size, ripeness, and quality standards (*e.g.*, free of bruises and signs of deterioration). Appx67. Detection of bacterial or other substandard conditions likely to affect the fruits in the mixture is paramount. Packaged mixtures are then tested to ensure they contain no metals or foreign materials. Size and appearance standards may be specifically applied to fruits based on the particular season and the fruits' country of origin. Once inspection and quality control is finished, the bagged product mixtures are then shipped for U.S. importation and stored at a third-party warehouse in the U.S., from which they are distributed to various supermarkets nationwide for retail sales.

The various frozen fruits mixture are produced according to specific recipes, accounting for *inter alia:* (i) the taste profile of the frozen fruit mixtures (*e.g.,* sweet, tart, etc.); (2) the proper quantities to be combined to ensure the proper taste profile; and (3) the taste and mouth feel profiles of each of the specific frozen fruits in questions. Appx70-Appx71. When developing frozen fruit mixture recipes, the Innovation Team at Nature's Touch takes into consideration the brix (*i.e.*, sweetness) of the

fruit, sizes of different fruits, ripeness of various fruits, and consumer preferences. Appx72. Innovation Team members have highly trained backgrounds and educational degrees in various disciplines, including food science, regulatory compliance and food safety. Appx131.

Amongst the consumer preferences taken into consideration are taste and mouth feel profile, and taste quality. Nature's Touch's recipes are guided, in the first instance, by the various properties of the individual fruits. For flavor pairing purposes, fruits are generally divided into four groups: (i) sub-acid fruits, such as apples, mangoes, berries, cherries and most grapes; (ii) acid fruits, such as grapefruit and most citrus, kiwi, strawberries and pomegranates; (iii) sweet fruits, such as bananas, grapes, figs; and (iv) melons. Appx70-Appx71. Generally, acid fruits combine well with sub-acid fruits or sweet fruits. As a further general rule, acid fruits do not combine well with sweet fruits. Hence, a mixture containing bananas and pineapples, for example, would probably not be pleasing to the palate. Additionally, because they deteriorate faster than other fruits, melons are generally consumed separately. Appx70-Appx71.

Nature Touch's Innovation Team generally conducts organoleptic testing in-house where it documents the reactions of consumers to various fruit combinations. Appx71. Recipes are adjusted as necessary to alter the ratio of the various fruits being combined in a given recipe. In some instances, recipes are developed to take

6

advantage of the specific properties of certain fruits. For instance, some fruits are high in antioxidants, which have positive health benefits (such as pomegranate, blueberries, and strawberries). Appx71. The Company combines these fruits in an "antioxidant" mixtures. Other fruits have superior qualities for detoxifying or imparting energy, and these will be combined and advertised for those purposes. There is, inevitably, a measure of subjectivity to any exercise involving taste.

## II.    The Lower Court Decision

Between June 2018 and November 2018, Plaintiff-Appellant imported into the United States the entries of frozen fruit mixtures at issue in this action. The entries liquidated between May and October 2019, pursuant to 19 U.S.C § 1504.

In liquidation, CBP improperly classified the subject frozen fruit mixtures under various subheadings of Heading 0811, HTSUS. Heading 0811 provides for "Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter." Appx5. CBP classified the fourteen frozen fruit mixtures in liquidation under various subheadings of the tariff, including: subheading 0811.90.10 ("Bananas and plantains,"), dutiable at 3.4% *ad valorem*; subheading 0811.90.52 ("Mangoes"), dutiable at 10.9% *ad valorem*; and subheading 0811.90.80 ("Other" fruits), dutiable at 14.5% *ad valorem*. Appx4-Appx5.

7

In all cases, Customs reached these classification decisions by treating the imported products as "mixtures" of individual fruits which are individually subject to different classifications and applying GRI 3(b) and 3(c).

Plaintiff-Appellant filed timely protests with CBP pursuant to 19 U.S.C. § 1514, asserting that all fourteen of the subject frozen fruit mixtures are properly classified under subheading 2106.90.98, HTSUS, as "[f]ood preparations not elsewhere specified or included: Other: Other"—and submitting that when goods are so classified, they are NAFTA eligible and duty free. The Company's protests were denied on July 4, 2020. Appx5-Appx6.

Following denial of its Customs protest, Plaintiff-Appellant initiated suit in the CIT, invoking the Trade Court's protest jurisdiction. 28 U.S.C. § 1581(a). Appx6. The Complaint alleges that the subject merchandise is properly classified under subheading 2106.90.98, HTSUS, as "[f]ood preparations not elsewhere specified or included: Other: Other."

The Government cross-moved for summary judgment, asserting that the subject "mixtures" were classifiable by operation of GRI 3(b) and (c) of the HTSUS, and classifiable under various provisions of subheading 0811.90, HTSUS. The Government argued that "[b]ecause multiple subheadings of Heading 0811, HTSUS cover the different ingredients of the all-fruit mixes at issue, classification must be resolved pursuant to GRI 3." Appx97. GRIs 3(b) and (c) provide:

8

3. When, by application of rule 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings, classification shall be effected as follows:

***

> (b) Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

> (c) When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

Customs explained that, in all cases, it could not discern an "essential character" material or component, and classified all the mixtures according to GRI 3(c), using the last subheading in numerical order for the ingredients of each mixture. Appx97.

After the parties' motions for summary judgment had been submitted and oral argument held thereon, the Trade Court requested supplemental briefing addressing the issue of "whether the merchandise at issue can or cannot be classified under subheading 0811.90.80, HTSUS," the provision for "other" frozen fruits. Appx8. In requesting supplemental briefing, the Trade Court noted that subheading 0811.90.10, HTSUS, refers to "Bananas and plantains" and subheading 0811.90.25 refers to "Cashew apples, mameyes, colorados, sapodillas, soursops and sweetsops." Appx35. The Court indicated its view that because individual subheadings of Heading 0811 reference multiple types of fruit *eo nomine*, the subheading 0811.90.80

9

provision for "other" fruits might be broad enough to include "mixtures" of different fruits. Appx35. The Court asked the parties to address "why subheading 0811.90.80, HTSUS ('Other') should be interpreted to mean 'other single fruits' when the term is surrounded by multiple-fruit subheadings." Appx35. Both the Government and Plaintiff-Appellant, in their supplemental briefs, asserted that subheading 0811.90.80, HTSUS, *could not* be interpreted in that manner. Rather, subheading 0811.90.80, HTSUS, providing for "Other" individual frozen fruits, not enumerated in the subheadings which precede it, and is not broad enough to encompass "mixtures" of fruits which, if imported separately, would be classifiable in two or more tariff subheadings. Appx8, Appx134, Appx142.

In its ruling, however, the CIT disagreed with both parties, holding that "Subheading 0811.90, 'Other,' describes all of the mixtures because they are not described in whole by the terms of any other six-digit subheading within the correct heading, 0811," and "that, because the mixtures are not described in whole by the terms of any of the eight-digit subheadings that enumerate fruits, they fall into the residual subheading 0811.90.80, "Other," dutiable at 14.5% ad valorem. Appx43. The CIT reasoned—incorrectly, we contend—"that it is improper to infer a mixtures exclusion where none is present in the plain text of heading 0811 or subheading 0811.90.80, 'Other.'" Appx39.  The Court's ruling "produces the same result that

10

the Government sought for five of the mixture products," but "for the other nine products this classification results in a higher duty rate." Appx44.

## SUMMARY OF THE ARGUMENT

The issue presented in this appeal is the proper classification of imported mixtures of frozen fruits according to the HTSUS—and the proper method for classifying such mixtures. GRI 1 to the HTSUS indicates that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes" and, "provided such headings or notes do not otherwise require," according to the subsequent General Rules of Interpretation ("GRI").

The HTSUS contains many subheadings which specifically provide for "mixtures" of fruits or vegetables, allowing such mixtures to be classified using GRI 1.[2] However, in the case of frozen fruits, no provision for "mixtures" exists.

---

[2] *See, e.g.,* subheading 0710.90, HTSUS, which provides for "Mixtures of [fresh] vegetables" and which precedes eight-digit tariff rate headings which provide for "Mixtures of pea pods and water chestnuts, other than Chinese water chestnuts" (0710.90.11), and "other" mixtures (0710.90.91); 0711.90, providing for "Other [preserved] vegetables"; mixtures of vegetables, and tariff item 0711.90.65 ("Other vegetables; mixtures of vegetables"); 0711.90, providing for "Other [dried] vegetables; mixtures of vegetables" and tariff item 0712.90.85 ("Other vegetables; mixtures of vegetables"); 0714.90 providing for "Frozen [vegetables], including tariff items 0714.90.40 (Mixtures of pea pods and Chinese water chestnuts"); 0714.90.42 ("Other mixtures of Chinese water chestnuts"); 0812.90.10 ("Fruit & nuts, provisionally preserved or prepared; Mixtures of fruits"); Heading 0813 ("Fruit, dried, other than that of headings 0801 to 0806; mixtures of nuts or dried fruits of this chapter: subheading 0813.50 ("Mixtures of nuts or dried fruits of this chapter); subheading 2004.90 ("Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen, other than products of heading 2006: Other vegetables and

"When an imported item is classifiable based on application of GRI 1, recourse to the subsequent GRIs and the ARIs is unnecessary and inappropriate." *Airflow Tech., Inc. v. United States*, 35 C.I.T. 1540, 1546 (2011), citing *BASF Corp. v. United States,* 482 F.3d 1324, 1325-26 (Fed. Cir. 2007). Only if the headings and Section and Chapter Notes do not determine classification does one look to the subordinate GRIs. *See Mita Copystar America v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998). In this regard, while the drafters of the HTSUS did not create a specific provision covering mixtures of frozen fruits, Nature's Touch contends that there is a provision of the tariff under which the imported products should be classified pursuant to GRI 1. Specifically, subheading 2106.90.98, HTSUS, provides for "[f]ood preparations not elsewhere specified or included: Other: Other." Appellant contends that this provision describes the frozen fruit mixtures at bar; and importantly, once classification under subheading 2106.90.98, HTSUS, is established, the imported

---

mixtures of vegetables"); subheading 2004.90 ("Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, not frozen, other than products of heading 2006: Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, not frozen, other than products of heading 2006); subheading 2006.00.50 ("Vegetables, fruit, nuts, fruit-peel and other parts of plants preserved by sugar (drained, glaced or crystallized): Other, including mixtures: Mixtures"); subheading 2008.19 ("Fruit, nuts and other edible parts of plants, otherwise prepared or preserved, whether or not containing added sugar or other sweetening matter or spirit, not elsewhere specified or included: Other, including mixtures").

mixtures clearly satisfy all tariff-shift rules of origin to be considered as "originating" goods for purposes of NAFTA.

However, even if, *arguendo*, this Court rejects classification of the subject mixtures under subheading 2106.90.98, HTSUS, they do not fall to be classified under subheading 0811.90.80, HTSUS. Rather, they would be classified according to the rules set out in GRIs 3(b) and (c).

The decision of the Trade Court below should be vacated, and this case remanded for further proceedings consistent with its opinion.

## ARGUMENT

I.   **Standard of Review.**

This Court reviews legal holdings *de novo* and examines factual findings for clear error. *Bell BCI Co. v. United States,* 570 F.3d 1337, 1340 (Fed. Cir. 2009). The Court also reviews the lower court's interpretation of statutory provisions *de novo. Lynteq Inc. v. United States*, 976 F.2d 693, 696 (Fed. Cir. 1992); *Guess? Inc. v. United States*, 944 F.2d 855, 857 (Fed. Cir. 1991). This Court reviews decisions of the CIT denying motions for summary judgment, and granting cross-motions for summary judgment, *de novo*.

The question presented here is one of tariff classification, which entails a two-step analysis: first, the Court ascertains the proper meaning of the terms in the tariff provisions at issue, which is a question of law; and second, the Court determines

whether the merchandise at issue falls within the parameters of the tariff term in question, which is a question of fact. *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1162 (Fed. Cir. 2017); *CamelBak Products LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011). Where there is no material factual dispute, as here, the two-step classification test "collapses entirely into a question of law," *Link Snacks, Inc. v. United States*, 742 F.3d 962, 965–66 (Fed Cir. 2014), and CBP's entitlement to the statutory presumption of correctness set out in 28 U.S.C. § 2639(a)(1) does not apply. *See e.g., United States v. Mead Corp.,* 533 U.S. 218, 235 (2001); *Universal Elecs. Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997).

The Court has an independent legal responsibility to decide the legal issue of the proper scope and meaning of HTSUS terms, *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005), and it is not limited to considering the classifications advanced by the parties, but has an obligation to determine "whether the government's classification is correct, both independently and in comparison, with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed. Cir. 1984).

## II.   The Frozen Fruit Mixtures are Not Properly Classified in Subheading 0811.90.80, HTSUS.

"To determine the meaning of an HTSUS provision, the court applies the GRIs in numerical order, beginning with GRI 1 and reaching subsequent GRIs if

14

analysis under the preceding GRI does not yield proper classification of the subject merchandise." *Amcor Flexibles Kreuzlingen AG v. United States*, 560 F. Supp. 3d 1326, 1330 (Ct. Int'l Tr. 2022). Under GRI 1, "classification shall be determined according to the terms of the headings and any relative section or chapter notes." "A court first construes the language of the heading, and any section or chapter notes in question." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998). "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). In interpreting the terms of a tariff provision "[a] court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Id.*

In some cases,[3] the HTSUS specifically provides for "mixtures" in a heading or subheading, allowing these "mixtures" to be classified using GRI 1. Where a mixture cannot be classified by reference to GRI 1, then the HTSUS directs that subsequent GRIs must be consulted to determine the tariff classification. GRI 3(b) provides that a mixture should be classified as if it consisted solely of the single material or component which imparts the "essential character" to the mixture. In determining

---

[3] *See* note 2, *supra*

15

the "essential character" component of a mixture or composite good, the Explanatory Notes to the Harmonized System provide that the classifier may consider an item's " essential character," examining "the nature of the material or component, its bulk, quantity, weight [and] value, [and] the role of a constituent material in relation to the use of the goods." Explanatory Note to GRI3(b); see also *Alcan Food Packaging (Shelbyville) v. United States*, 771 F.3d 1364, 1365, (Fed. Cir. 2014). If no single component or material imparts the "essential character,[4] then GRI 3(c) indicates that the mixture should be classified under the component material tariff heading which occurs last in numerical order in the tariff.

In this way, the HTSUS provides a comprehensive system for the classification of imported "mixtures"—they may fall into a specific "mixtures" tariff subheading and should be classified pursuant to GRI 1, or, if necessary, using the tests of GRI 3(b) and (c). However, Plaintiff-Appellant has found no cases holding that mixtures may be classified in a residual provision for "other" goods described in a tariff heading or subheading. Typically, an "other" heading is meant to exclude from its

---

[4] Given the wide range of factors which can be examined to determine "essential character," the use of GRI 3(c) to classify mixtures should be somewhat rare. *See Toy Biz, Inc. v. United States*, 219 F. Supp. 2d 1289, 1290 (Ct. Int'l Tr. 2002) ("The Explanatory Notes specify that these three methods of classification "operate in the order in which they are set out in the Rule," . . . if both Rules 3(a) and (b) fail, Rule 3(c) will apply." Explanatory Note to GRI 3(I)." at 1296).

coverage items specifically named in preceding subheadings. Under the unique interpretation adopted by the Trade Court in this action, an "other" provision, which is meant to *exclude* items named in preceding provisions, now *includes* those previously-named items if they are imported together in a mixture with *other* previously-named (and excluded) items. [5]

The Trade Court's unique and unprecedented interpretation flows from a false premise, as discussed herein, which, if sustained, would (i) greatly expand the scope of "Other" provisions throughout the HTSUS; and (ii) greatly limit operation of the provisions in GRIs 3(b) and (c) which are designed to classify mixtures.

As noted above, Heading 0811, HTSUS (which covers "frozen fruits"), does not contain any language at the international (4-digit) heading level; international (6-digit) subheading level; nor national tariff-rate (8-digit) subheading level, which

---

[5] This presumes comparisons are made at the same heading or subheading level, as required by GRI 6, which provides:

> For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, mutatis mutandis, to the above rules, on the understanding that only subheadings at the same level are comparable. For the purposes of this rule, the relative section, chapter and subchapter notes also apply, unless the context otherwise requires.

17

indeed provides for "mixtures" of such fruits.[6] Rather, it contains a number of pro-

visions which describe individual fruits (*e.g.,* subheading 0811.10.00, HTSUS,

---

[6] The HTSUS consists of 4-digit headings and 6-digit headings, devised by the Brussels-based World Customs Organization ("WCO"), which all nations employing the Harmonized System ("HS") nomenclature are required to use. The United States Congress also adds 8-digit "national" tariff rate subheadings, which may further describe particular goods. The 4- 6-, and 8-digit provisions, together with the Section and Chapter Notes, General Rules of Interpretation and United States notes, constitute the official legal text of the tariff schedule. Indeed, 19 U.S.C. § 3004(c), provides:

> (c) Status of Harmonized Tariff Schedule
>
> > (1) The following shall be considered to be statutory provisions of law for all purposes:
> >
> > > (A) The provisions of the Harmonized Tariff Schedule as enacted by this chapter.
> > >
> > > (B) Each statutory amendment to the Harmonized Tariff Schedule.
> > >
> > > (C) Each modification or change made to the Harmonized Tariff Schedule by the President under authority of law (including section 604 of the Trade Act of 1974. [19 U.S.C. 2483]).

We note that statistical subheading 0811.90.8085 is a provision for "Frozen mixes only of combinations of strawberries, blueberries, red raspberries and blackberries." This statistical annotation is not part of the legal text of the HTSUS. It is well-established that "[t]he tenth-digit statistical suffixes … are not statutory." *Chemtall, Inc. v. United States*, 878 F.3d 1012, 1026 (Fed. Cir. 2017) "The statistical suffixes 'are not included among the appropriate references listed in GRI 1 and in the legislative history of the HTSUS.'" *Id.* Nature's Touch has petitioned the United States International Trade Commission to remove this statistic suffix, so far without success. In any event, the statistical suffix may be given no weight in addressing the classification issue before this Court.

providing for strawberries), and a provision which provides for "other" fruits, not previously enumerated (*i.e.,* subheading 0811.80, HTSUS).

Application of the GRIs indicates that frozen fruit mixtures do not fall within the plain meaning of Heading 0811, HTSUS. "GRI 1 … requires that goods be classified according to the language of the headings," *Orlando Food Corp. v. United States*, 140 F.3d, 1337, 1440 (Fed. Cir. 1998), and a classification analysis "begins, as it must, with the language of the headings." *Id.* Here, Heading 0811, HTSUS, provides for "[f]ruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter." (Emphasis added). No mention is made of "mixtures." Thereafter, the various 6-digit international, and 8-digit national tariff rate, subheadings of Heading 0811, HTSUS, describe *individual fruits*, or *groups of specific fruits*, but there is no mention of "mixtures" of frozen fruits:

| Heading 0811, HTSUS 6- or 8-Digit Code | Described Merchandise |
|---|---|
| 0811.10 | Strawberries |
| 0811.20 | Raspberries, blackberries, mulberries, loganberries, black, white or red currants and gooseberries (other than kiwi fruit) |
| 08.11.90 | Other |
| 08.11.90.10 | Bananas and plantains |
| 0811.90.20 | Blueberries |

19

| 0811.90.22 | Boysenberries |
|---|---|
| 0811.90.25 | Cashew apples, mameyes colorados, sapo-dillas, soursops and sweetsops |
| 0811.90.30 | Coconut meat |
| 0811.90.35 | Cranberries (*Vaccinium macrocarpum*) |
| 0811.90.40 | Papayas |
| 0811.90.50 | Pineapples |
| 0811.90.52 | Mangoes |
| 0811.90.55 | Melons |
| 0811.90.80 | Other |

Each of these tariff breakdowns include individually identified fruits. Nowhere at the 4-, are 6- or 8-digit level frozen fruit "mixtures" specified or included. Frozen Fruit mixtures are simply not described by the plain meaning of the 4-digit language of Heading 0811, HTSUS (providing for "Fruit … Frozen"). Under the legally binding, 4-, 6-, and 8-digit classifications, frozen fruit mixtures do not meet the *plain language requirements* for classification in Heading 0811, HTSUS.

The Trade Court's interpretation is based on the incorrect supposition that subheading 0811.20, HTSUS (which provides for several types of berries), and subheading 0811.90.25, HTSUS (which covers several named varieties of cashew apples), provide for "mixtures." Hence, the court reasoned, subheading 0811.90.80, HTSUS, must also be sufficiently broad to cover the instant "mixtures." However,

as explained *infra*, for goods to be considered "mixtures" for tariff purposes, they must either (i) be specifically described in a tariff heading or subheading providing for "mixtures" and subject to classification under GRI 1; or (ii) consist of items classified in two or more tariff provisions, in which case classification is resolved by resort to GRIs 3(b) and (c).

Some HTSUS headings or subheadings describe two or more products. However, when two or more products covered by the same tariff provision are imported together, they do not constitute of a "mixture" as that concept is construed under Trade Court precedent. The case which best illustrates this principle is *Standard Chlorine Chem. Co. v. United States*, 13 C.I.T. 198 (1989), which concerned the question of whether two isomers of trichlorobenzene (each individually classified in the same tariff heading providing *eo nomine* for "trichlorobenzene"), should be classified in that provision, or in a provision covering mixtures.[7] The *Standard Chlorine* court noted that "mixtures" had historically been viewed as combinations of two or more goods which, if separately imported, would be classified in different tariff provisions. The tariff concept of "mixtures" did not apply where two or more items,

---

[7] The *Standard Chlorine Chemical* case was decided under the prior Tariff Schedules of the United States ("TSUS"). While decisions under the TSUS are not controlling on HTSUS cases, they are considered persuasive when dealing with the interpretation of similar tariff terms. *See BASF Corporation v. United States*, 30 C.I.T. 227 (2006); *E.M. Chems. Inc. v. United States*, 20 C.I.T. 382, 386 n.5 (1996).

*classified in the same tariff provision*, were imported together. Distinguishing other cases classifying goods as "mixtures," the court noted:

> The feature which distinguishes these cases, however, is that, unlike the case at bar where the separate trichlorobenzene isomers are individually dutiable under a single *eo nomine* provision, each of them pertained to a mixture of two or more separate and unique substances, each of which would have fallen within a specific and different *eo nomine* provision if imported alone. **The mixtures of them, as imported, were beyond the scope of those specific provision(s), as opposed to the merchandise at bar, which is "neither more nor less than what is described by the *eo nomine* tariff provision"** …

*Id.* at 201 (emphasis added). Thus, if bananas and plantains were imported together, they would not be considered a "mixture" for tariff purposes—they would simply be two specific goods provided for *eo nomine* in subheading 0811.90.10, HTSUS, at the same rate of duty. *See e.g., Border Brokerage Inc. v. United States,* 64 Cust. Ct. 331, 337 (1970); *Quong Yuen Shing Co. v. United States,* 31 C.C.P.A. 43, 48 (1943); *United States v. Lobsitz*, 16 Ct. Cust. 475, 477 (1929).

Precedent also establishes that when products classified in two or more tariff provisions are imported together, and are covered by a provision for "mixtures," they must be classified in that mixtures provision. They cannot be treated as "commingled" goods under General Note 3(f), HTSUS, and may not be constructively or actually segregated and assessed with duty under provisions covering the individual components of the mixture. *See Amoco Oil Company v. United States*, 749 F.2d

1576, 1580-81 (Fed. Cir. 1984).[8] In this regard, General Note 3(f)(v), HTSUS, pro-

vides:

> The provisions of subdivision (f) of this note shall apply only in cases where the tariff schedule does not expressly provide a particular tariff treatment for commingled goods."

In this case, the commingled goods answer to the description of "other" food prepa-

rations of subheading 2106.90.98, HTSUS.

To be clear, none of the six- or eight-digit subheadings in Heading 0811,

HTSUS, provides for "mixtures." Rather, they are merely provisions some of which

*eo nomine* describe two or more items. The Trade Court was wrong to suppose oth-

erwise, and its expansion of subheading 0811.90.80, HTSUS, proceeds from the in-

correct assumption that any of the prior subheadings cover "mixtures."

Thus, before the Trade Court, Plaintiff-Appellant Nature's Touch concurred

with the Government's position that subheading 0811.90.80, HTSUS (covering

"Other" frozen fruits), covers individual frozen fruits not mentioned in the eight-

digit subheadings which preceded it. It follows that the subject frozen fruit mixtures

are not classifiable thereunder. As indicated, GRI 1 requires that the frozen fruit

---

[8] General Note 3(f), HTSUS, provides that where goods classified in two or more provisions are "commingled," they are subject to duty at the highest rate applicable to any of the commingled items. However, before assessing duty in this way, Customs must provide the importer with a "notice of commingling" and give the importer the opportunity to actually or constructively segregate the commingled articles. *See* General Note 3(f)(i) and (ii), HTSUS.

mixtures be classified under the only HTSUS provision which <u>completely</u> describes them, which is the subheading 2106.90.98, HTSUS, provision for "Other" food preparations, not elsewhere specified or included."[9]

## III.   The Trade Court's Decision is Inconsistent with Canons of Statutory Interpretation.

### A.   The Decision is Inconsistent with *Noscitur a Sociis.*

Since the various subheadings of Heading 0811, HTSUS, include only single uniquely identified fruits, the provision for "other" frozen fruits of subheading 0811.90.80, HTSUS, similarly fails to describe the frozen fruit mixtures at bar. The settled rule of statutory construction, *noscitur a sociis*, provides that the meaning of a tariff term should be judged with reference to the tariff terms which surround it. The canon holds that words grouped in a list should be given similar meanings. *See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,* 776 F.3d 1351, 1359 n.1 (Fed. Cir. 2015) ("The maxim noscitur a sociis, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth

---

[9] That subheading 2106.90.98 does not make specific reference to "fruits" or "frozen fruits" does not matter. The rule of "relative specificity" in GRI 3(a) only applies in cases where a product is *prima facie* described in two or more provisions of the tariff. That is not the case here, as the Government is unable to point to any HTSUS provision in Chapter 8 which would cover the fruit mixtures at bar.

to the Acts of Congress") (citing *Jarecki v. G. D. Searle & Co.,* 367 U.S. 303, 307 (1961)).

In *Jewelpak Corp. v. United States*, 24 C.I.T. 249, 253 (2000), aff'd 297 F.3d 1326, 1337 (Fed. Cir. 2002), the Court used this statutory canon to determine whether a box was properly classified as a jewelry box, reasoning:

> The items listed in subheading 4202 are all intended for reuse. Suit-cases, briefcases, cigarette cases, musical instrument cases, and all the others listed therein are items which are used repeatedly. In order for the boxes at issue here to be classified as jewelry boxes in this heading, fitting with the rest of the items in the list, the boxes must be usable on a repeated basis.

Here, all of the subheadings falling under Heading, 0811, HTSUS, include only one type of fruit in their plain text. Just as the Court did in *Jewelpak*—*i.e.*, applying *noscitur a sociis* to hold that a jewelry box must be reusable—this Court should use this statutory cannon to examine the word "other" in Subheading 0811.90.80, HTSUS, as only encompassing a individual fruits not previously or specifically mentioned.

Moreover, as noted in *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1165 (Fed. Cir. 2017) (emphasis added):

> The principle of *noscitur a sociis* confirms our conclusion that the subject bauxite proppants do not fall within the terms of either Heading 6909 or Heading 6914. That principle teaches "<u>a word is known by the company it keeps</u>," which "avoid[s] ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Yates v. United States,* 135 S. Ct. 1074, 1085, 191 L. Ed. 2d 64 (2015) (internal quotation marks and citation omitted); *Bilski v. Kappos*, 561 U.S. 593,

604, 130 S. Ct. 3218, 177 L. Ed. 2d 792 (2010) ("[A]n ambiguous term may be given more precise content by the neighboring words with which it is associated." (internal quotation marks and citation omitted)); see also *Jewelpak Corp. v. United States*, 297 F.3d 1326, 1331, 1337 (Fed. Cir. 2002) (affirming the use of noscitur a sociis to interpret an HTSUS provision).

The Trade Court's decision here is inconsistent with this Court's *noscitur a sociis* precedent, since it expands subheading 0811.90.80, HTSUS, to include "mixtures" despite the fact that this is not provided for in the words surrounding that heading; and because it also includes within that subheading articles enumerated in previous subheadings, which the use of the word "other" would ordinarily exclude from the provision.

## B. The Decision is Inconsistent with the Rules Regarding *Eo Nomine* Classification.

It may also be observed that all of the subheadings within Heading 0811, HTSUS, are *eo nomine* provisions that identify specific articles by name. Subheading 0811.90.80 provides for "other" frozen fruits, not specifically identified in the preceding *eo nomine* headings. While an *eo nomine* tariff provision typically includes all forms of the named article,[10] it is well-established that <u>*eo nomine* provisions do not cover "mixtures</u>." Indeed, where a named article contains a slight impurity or *de minimis* feature, it may well be classified as the article named in a tariff

---

[10] An *eo nomine* provision covers all forms of the named article absent limiting language or contrary legislative intent. *Nidec Corp. v. United States*, 68 F.3d 1333, 1336 (Fed. Cir. 1995).

provision. *See e.g., P.R. Dreyer Inc. v. United States*, 4 Cust. Ct. 113, 114 (1940),

(origanum oil, containing a slight (0.5%) impurity of othrocresol, was held to be

covered by an *eo nomine* provision for origanum oils, rather than as a mixture or

combination containing distilled oils); *see also, P&G Mfg. Co. v. United States*, 16

Cust. Ct. 36, 39 (1946) (citronella oil with small amount of kerosene held classifiable

as citronella oil); *Betz v. United States*, 6 Cust. Ct. 297, 305-306 (1941) (seaweed

with small amounts of other materials added classified as processed seaweed). But

two items classified individually in different tariff provisions, when combined to-

gether, do not fall into a single *eo nomine* tariff heading. Subheading 0811.90.80,

HTSUS, does not cover the various frozen food mixtures which are at issue in this

case.

Thus, the *eo nomine* provision for frozen strawberries set out at subheading

0811.10.00, HTSUS, might cover two or more kinds of frozen strawberries classified

under that provision; but this would not constitute a "mixture" in tariff parlance. But

subheading 0811.90.80, HTSUS, would not—and could not—cover a mixture of

strawberries *with blueberries*, because these items are individually classified under

different tariff provisions. *See* Subheading 0811.90.20, HTSUS; *see also Border

Brokerage Inc. v. United States*, 64 Cust. Ct. 331, 337 (1970); *Quong Yuen Shing

Co. v. United States*, 31 C.C.P.A. 43, 48 (1943); *United States v. Lobsitz*, 16 Ct.

Cust. 475, 477 (1929). Thus, unless a particular tariff provision for such mixture is

identified which would allow for classification pursuant to GRI 1,[11] the mixture would fall to be classified under the provisions of GRI 3(b) and (c).

It is equally incorrect to say, as the Trade Court did here, that when two or more frozen fruits described *eo nomine* are imported together in a mixture (*e.g.*, strawberries and blueberries), such mixture falls to be classified in subheading 0811.90.80, HTSUS—an "other" provision which, construed in light of its ordinary meaning, would exclude both strawberries and blueberries from classification there-under. Subheading 0811.90.80, HTSUS, provides for:

| 0811 | Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter: |

\*\*\*

| 0811.90 | Other: |

\*\*\*

| 0811.90.80 | Other |

---

[11] Numerous types of "mixtures" are expressly deemed classifiable by application of GRI 1. *See, e.g., USR Optonix Inc. v. United States*, 362 F. Supp. 2d 1365, 1377-78 (Ct. Int'l Tr. 2005). At the same time, combinations of articles which do not meet GRI descriptions of "mixtures" are not classifiable as "mixtures" under GRI 1. *See, e.g., Rhodia Inc. v. United States,* 441 F. Supp. 2d 1368, 1376 (Ct. Int'l Tr. 2006).

The six-digit subheading 0811.90, HTSUS, is preceded by two six-digit heading which describe particular fruits—*e.g.,* subheading 0811.10, HTSUS ("Strawberries"); 0811.20, HTSUS ("Raspberries, Blackberries, Mulberries, Loganberries, Currents and Gooseberries (no Kiwi fruit)"). Accordingly, frozen fruits not described in subheadings 0811.10 or 0811.20, HTSUS, fall to be classified in the "Other" provision of subheading 0811.90, HTSUS.

### C.    The Lower Court's Ruling Disregards the Canon *Expresio Unius est Exclusio Alterius*.

Also germane to the instant discussion is the canon of statutory construction "*expressio unius est exclusio alterius*, which means that the expression of one thing implies the exclusion of all others. *United States v. Wells Fargo Bank*, 485 U.S. 351, 357 (1988); *see also, Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,* 776 F.3d 1351, 1359 n.1 (Fed. Cir. 2015). In constructing Heading 0811, HTSUS, (describing frozen fruits), the drafters of the tariff expressly provided for individual frozen fruits, while declining to create a provision for "mixtures" of such fruits. This omission must be deemed intentional, since the drafters obviously did see fit to create provisions for "mixtures" of fruits and vegetables in various other places in Chapters 7, 8 and 20, HTSUS.[12] Where Congress specifies the things which fall within

---

[12] *See* note 2, supra

the scope of an enactment, and fails to include others, the exclusion must be presumed intentional and respected. *See Pustet & Co., v. United States*, 13 Ct. Cust. 530, 532 (1926); *see also Nissan Motor Mfg. Corp U.S.A. v. United States*, 693 F. Supp. 1183, 1186 (Ct. Int'l Tr. 1988), aff'd, 884 F.2d 1375 (Fed. Cir. 1989).

There is no possible reading of the HTSUS which would permit classification of frozen fruit *mixtures* in any of the subheadings of Chapter 8, HTSUS, based on GRI 1. Historically, whenever Congress has wanted a tariff provision to embrace "mixtures," it has expressly so provided by including the word "mixtures" in the tariff heading or provision. *See e.g.*, *Amoco Oil Co. v. United States*, 749 F.2d 1576, 1581-1582 (Fed. Cir. 1984); *Quong Yuen Shing Co. v. United States*, 31 C.C.P.A. 43, 48 (1943); *Standard Chlorine Chemical Co. v. United States*, 13 C.I.T. 198, 201 (1989); *see also U.S.R. Optonix Inc. v. United States*, 29 C.I.T. 229, 240 (2005) (Heading 2846, HTSUS, in a chapter that normally covered only separately-identified chemical compounds, specified that certain mixtures were classified thereunder). We have found no instance where "mixtures" were found to be included by implication in a tariff provision which only names individual goods. The Trade Court, however, incorrectly interpolated a "mixtures" provision into the subheading 0811.90.80, HTSUS, provision for "other" frozen fruits, where none was intended.

**IV.   The Merchandise is Properly Classified Under Subheading 2106.90.98, HTSUS.**

By its plain language, Heading 2106, HTSUS, covers the fourteen different frozen fruit mixtures at issue in this action, providing for "[f]ood preparations not elsewhere specified or included." As noted in *Otter Products LLC v. United States*, 70 F. Supp. 3d 1281, 1285 (Ct. Int'l Tr. 2015), aff'd 834 F.3d 1369 (Fed. Cir. 2016), where "an imported article is described in whole by a single classification heading or subheading, then that single classification applies," and the GRI's other than GRI 1 are "inoperative." *Id. see also La Crosse Technology, Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013).

To be classified "under heading 2016, HTSUS, two criteria must be met: the product must be (1) a food preparation; which is (2) not elsewhere specified or included." *R.T. Food, Inc. v. United States*, 36 C.I.T. 1637, 1644 (2012). "Heading 2106, HTSUS … is an expansive basket heading that only applies in the absence of another applicable heading." *Id.*

It is beyond question that a mixture of frozen fruits is a "food preparation." The frozen fruit mixtures are designed to be consumed as a food, have nutritional value, and are typically used as an ingredient in the making of other food products. Appx71, Appx76. As the frozen fruit mixtures are not specifically enumerated in any of the other provisions of subheading 2106, HTSUS, they are classified at the 6-digit level under subheading 2106.90, HTSUS, as "other food preparations," and at

31

the 8-digit level, under subheading 2106.90.98, HTSUS, as "other food preparations, not elsewhere specified or included."

The Explanatory Notes to Heading 2106, HTSUS, support this reading, providing that Heading 2106 covers:

(A) Preparations for use, either directly or after processing (such as cooking, dissolving or boiling in water, milk, etc.), for human consumption.

(B) Preparations consisting wholly or partly of foodstuffs, used in the making of beverages or food preparations for human consumption. The heading includes preparations consisting of mixtures of chemicals (organic acids, calcium salts, etc.) with foodstuffs (flour, sugar, milk powder, etc.), for incorporation in food preparations either as ingredients or to improve some of their characteristics (appearance, keeping qualities, etc.).

All of the mixtures at bar are readily recognizable as preparations "for use, either directly or after processing … for human consumption." The fruit mixtures may be removed from their retail bags, thawed and consumed directly. They also are (more frequently) processed, by cooking (*e.g.,* when used to make a jam, chutney or baked good), or in other ways (being combined with water or milk and blended to make a smoothie). Appx76.   As the frozen fruit mixtures at bar are not "elsewhere specified or included," they fall to be classified in subheading 2106.90.98, HTSUS, and this classification occurs by operation of GRI 1.

By contrast, fruit mixtures of a kind provided for in Heading 2008, HTSUS, would not be classified in Heading 2106, HTSUS[13], since they are provided for elsewhere. *See e.g., Drygel Inc. v. United States*, 541 F.3d 1129, 1136 (Fed. Cir. 2007) (reversing classification of certain "breath strips' as "food preparations" of subheading 2106.90, HTSUS, based on a determination that they were provided for in subheading 3306.90, HTSUS, as preparations for oral or dental hygiene).

As discussed, the first step in this classification analysis is determining whether the subject merchandise (i) is "food"; and then whether it (ii) is "a preparation." Since the product consists of frozen fruit, it should be undisputed that the product is food. "The common meaning of 'food' is that of a substance that is intended to be ingested." *Mondelez Global LLC. v. United States*, 253 F. Supp. 3d 1329, 1335 (Ct. Int'l Tr. 2017) (citing *Franklin v. United States*, 289 F.34 753, 760-

---

[13] The Trade Court, in its opinion (Appx16), suggested that "the Explanatory Note to heading 2106, HTSUS operates to exclude mixtures of cut fruits and vegetables from the heading if they are consumed as such . . . ", but the ENs say no such thing. They do say that heading 2106 does not include "Preparations made from fruit, nuts and other edible parts of plants of heading 20.08, provided that the essential character of the preparations is given by such fruit, nuts or other edible parts of plants (eading 20.08). This is clearly a reference only to preparations of "prepared or preserved" fruits, etc., of HTSUS Heading 2008, which does contain a "mixtures" provision.

761 (Fed. Cir. 2002)). The "food" here consists of various types of frozen fruit, ultimately intended for human consumption.[14]

The next term to analyze is "preparation." In *Arbor Foods, Inc. v. United States*, 30 C.I.T. 670, 677 (2006), the Trade Court observed that:

> The Federal Circuit indicated that "[i]nherent in the term 'preparation' is the notion that the object involved is destined for a specific use. The relevant definition from The Oxford English Dictionary defines "preparation" as "a substance specially prepared, or made up for its appropriate use or application, e.g. as food or medicine, or in the arts or sciences."

*Id.* (citing *Orlando Food Corp. v. United States*, 140 F.3d at 1441 (Fed. Cir. 1998)). The subject frozen fruit mixtures are specially prepared for multiple appropriate uses and applications as food. In addition to being mixed to specific flavor profiles, they are also combined for specific nutritional purposes (*e.g.,* to provide antioxidants or energy to those consuming them, s*ee* Appx71).  Thus, in *Arbor Foods*, the Court found that an imported mixture consisting 98% of sugar, and 2% of gelatin, and used to make confectionery, fell within the definition of "preparation" for purposes of subheading 2106.90, HTSUS.

To be clear, a prepared food article is not commercially interchangeable with an original raw food article. *May Food Mfg. v. United States*, 33 C.I.T. 430, 433

---

[14]As further evidence that the instant merchandise is "food," as required by law, all packages of the subject fruit products contain a disclosure of nutritional values.

(2009). A "food preparation" is not classifiable in the same heading as the raw form of the preparation if the "name, character and chemical composition are indisputably distinct from those of [the product] in … raw form." *Sabritas v. United States*, 22 C.I.T. 59, 67 (1998). "The word 'prepared,' in a tariff sense, means ordinarily, that a commodity has been so processed as to be advanced in condition and made more valuable for its intended use." *Stone & Downer Co. v. United States*, 17 C.C.P.A. 34, 36 (1929).

Here, the fourteen frozen fruit mixtures at bar meet all of these tests. The fruit mixtures are not commercially interchangeable with individual frozen fruits because of the specifically developed recipes used to formulate the fruit mixtures.[15] All of the frozen fruit mixes possess a different name, character and chemical composition from any of the individual fruits in the mixture. A mixture of three frozen fruits cannot in any scenario share the same "name character and chemical composition" as any of the individual components of the mixture. Finally, the frozen fruit mixtures

---

[15] In this regard, Nature's Touch notes that it produces and imports retail-packaged products containing individual frozen fruits. A reasonable hypothetical purchaser seeking to purchase a single frozen fruit—e.g., strawberries—would not accept as a substitute a mixture containing strawberries, applies, blueberries and mangoes. See e.g., *Texport Petroleum Inc. v. United States,* 185 F.3d 1291, 1295 (Fed. Cir. 1999) (discussing the concept of "commercial interchangeability" in connection with drawback substitution).

are advanced in condition to make them more valuable for their intended use because of their unique recipes and flavor profiles.

There is a considerable amount of "preparation" performed by Plaintiff-Appellant in readying the instant fruits for mixture, packaging, and later for importation and sale to U.S. customers. An apt comparison would be a consumer who buys fresh vegetables and other ingredients to make a salad, versus purchasing a "prepared" salad, in which the individual ingredients have been reduced in size and combined in specific proportions, according to recipe, and are ready-to eat. For example, here, assume that Nature's Touch creates a product mixture that includes pineapple, mango, strawberry, and blueberry fruit and fruit pieces. The pineapple and mango ingredients would need to be reduced in size to edible, bite-sized portions. Meanwhile, inedible materials (*e.g.,* rinds and cores) must be sifted, removed, and disposed of. The strawberries would need to be examined and blended in the correct proportions to the other fruits. The blueberries would need to be examined and quick-frozen. These four ingredients would eventually need to be cleaned and combined in proportions that meet a given recipe's exacting requirements. For a consumer to prepare such a mixture from individually purchased fresh fruits would entail considerable work and processing, and may cost more. Hence, a considerable amount of "preparation" is performed.

At deposition, the Government asked Appellant's designated Rule 30(b)(6) witness, Christos Panagopoulos, Nature Touch's Vice President of Supply Chain, whether, with respect to a particular imported mixture, "looking at the organic mixed berry, do you want strawberry—the taste of the strawberry to dominate in that mixture, or do you want it to all blend together?" Mr. Panagopoulos answered:

> [Y]ou're interested in is how it tastes … at the end of all of this. … [W]hen you're consuming all four of them [fruits] together, what taste do you want? And in this case, the better result was to have 35 percent strawberry so it's—you're not looking at it in terms of individual fruit only. You're looking at it—you know, when we put it in a smoothie or we put it in our oatmeal and we take a scoop—you know, what do we want it to taste like.

Appx133. This prompted the Government to ask "[s]o you're looking at how each individual fruit contributes to the whole?" To which Mr. Panagopoulos responded:

> Yeah, that's right. So if you put too much strawberry and it tastes way too sweet, as an example, and you don't want that, you'd reduce the strawberry and you'd increase something else.

Appx133. This testimony is evidence that the frozen fruit mixes are not commercially interchangeable with the individual frozen fruits and that they are indisputably distinct articles from the product in its raw form. As described above, Plaintiff-Appellant works tirelessly and constantly, internally, and with customers, to develop the best tasting mixtures of frozen fruits. Appx70-App71.

There is an entire specialized "Innovation Team" within Nature's Touch solely dedicated to developing the best tasting mixtures of frozen fruits. Members of

this team "have university degrees in food science, food safety or regulatory affairs." Appx131-Appx132. Experience with how fruits taste, and perhaps complement or detract from one another, is also a major factor for members of this team. The team operates in conjunction with private label brands to develop specific frozen fruit mixture recipes. The team utilizes product development kitchens to develop the mixes and to sample various recipes to see how they will perform in taste tests. Certain recipes will be more commonly used in various cooking applications. With all of the background work that goes into making a specific flavor profile for each of the frozen mixes at issue, it is indisputable that the "whole mixture" is different from any of individual fruits contained therein. A customer who buys a frozen fruit mix at a store has in mind the full flavor profile of the mix, not the flavor of any individual fruit, and each product mixture is therefore not commercially interchangeable with its individual fruit components.

If a product can be classified using GRI 1 according to the terms of the headings and any relative section or chapter notes, *then it must be*. *See Lemans Corporation v. United States*, 660 F.3d 1311, 1316 (Fed. Cir. 2011); *Mita Copystar Am. v United States*, 160 F.3d 710, 712 (Fed. Cir. 1998). Resort to the subsequent GRIs is available only when goods are *prima facie* classifiable in two or more headings of the tariff. *Id.* That is not the case here. Thus, the frozen fruit mixes are *prima facie* classified under subheading 2016.90.98, HTSUS, by application of GRI 1.

38

## V.    The Subject Mixtures Qualify for Duty-Free Entry as NAFTA "Originating."

To the extent the imported frozen fruit mixtures are properly classified under subheading 2106.90.98, HTSUS, they all also qualify as "originating" articles of Canada pursuant to NAFTA.[16]

All of the constituent fruits utilized in producing the mixtures are classified in Chapter 8, HTSUS, and all of the constituent ingredients imported into Canada in frozen condition would have been classifiable under Heading 0811, HTSUS. Fresh blueberries from the United States and Canada would be classifiable under subheading 0810.40.00, HTSUS. Thus, even assuming, *arguendo*, that all of these ingredients are treated as "non-originating," the mixtures meet the requirements for being NAFTA "originating" goods.

The NAFTA preferential rule of origin for goods of Heading 2106, HTSUS, as set out in United States Note 12(t) to the HTSUS, requires that all non-originating materials undergo a tariff change, by reason of processing performed in a NAFTA country: "To heading 2106 from any other chapter." (Emhasis added). Here, all of the ingredients in Plaintiff-Appellant's products undergo a change from Chapter 8, HTSUS, to Heading 2106, HTSUS. The requirement for NAFTA "originating" sta-

---

[16] NAFTA was in force at all relevant times.

tus is therefore met. To the extent Appellant timely filed claims for NAFTA treatment for the mixtures at bar, they should be classified free of duty as NAFTA originating.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff-Appellant, Nature's Touch Frozen Foods (West) Inc., respectfully requests that this Court vacate the opinion and judgment of the CIT, and hold the subject frozen fruit mixtures classifiable under HTS subheading 2106.90.98. Alternatively, if that provision does not apply, the mixtures should be classified in accordance with the provisions of GRTI 3(b) and 3(c).

Respectfully submitted.

_/s/ John M. Peterson_
John M. Peterson
*Counsel of Record*
Patrick B. Klein
NEVILLE PETERSON LLP
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Ste. 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

*Attorneys for Plaintiff-Appellant*

September 27, 2023

40

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing Principal Brief of Plaintiff-Appellant, Nature's

Touch Frozen Foods (West) Inc., complies with the relevant type-volume limitation

of the Federal Rules of Appellate Procedure and Federal Circuit Rules. It was pre-

pared using a proportionally-spaced typeface and includes 9,141 words.


   /s/ John M. Peterson
John M. Peterson

September 27, 2023

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 27th day of September, 2023, I electronically filed the foregoing Principal Brief Nature's Touch Frozen Foods (West) Inc., with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.


      /s/ John M. Peterson
        John M. Peterson

September 27, 2023