**Appeal No. 23-2093**

# United States Court of Appeals
# For The Federal Circuit

NATURE'S TOUCH FROZEN FOODS (WEST) INC.,

*Plaintiff-Appellant,*

—v.—

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of International Trade
in Case No. 20-00131, Judge Stephen Alexander Vaden

## BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

BRANDON A. KENNEDY
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (212) 264-9237

*Attorneys for Defendant-Appellee*

*Of Counsel:*

FARIHA KABIR
General Attorney
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection
New York, New York 10278

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

ISSUES PRESENTED......................................................................... 1

STATEMENT OF THE CASE ............................................................ 2

  I.   The Imported Merchandise ....................................................... 2

  II.   Procedural History .................................................................... 4

  III. The Trial Court's Decision........................................................ 5

      A. The Nine All-Fruit Mixtures .................................................. 6

      B. The Five Fruit-And-Vegetable Mixtures ................................ 7

      C. Application Of The GRIs To Determine The Correct Subheading ........ 9

      D. Eligibility For Duty-Free Treatment Under NAFTA ........................... 10

SUMMARY OF ARGUMENT ......................................................... 10

ARGUMENT...................................................................................... 12

  I.   Standard Of Review................................................................. 12

  II.   The Legal Framework For Tariff Classification ....................... 12

  III. The Trial Court Correctly Interpreted The Term "Fruit" Of Heading
      0811 To Include Fruit Of All Kinds, Including Mixed Fruit...................... 16

  IV. The Trial Court Correctly Classified The Subject Merchandise As "Fruit …
      Frozen: Other: Other" Under Subheading 0811.90.80.............................. 21

  V.   The Trial Court Correctly Rejected Classification Of The Frozen Fruit
      Mixtures As "Food Preparations Not Elsewhere Specified Or Included: . . .
      Other" Under Subheading 2106.90.98 ...................................................... 29

VI. The Trial Court Correctly Denied Duty-Free Treatment For The Subject Merchandise Pursuant To NAFTA ............................................................ 36

CONCLUSION ................................................................................. 39

ADDENDUM ................................................................................... 41

# TABLE OF AUTHORITIES

**Cases**

*Aves. In Leather, Inc. v. United States,*
  423 F.3d 1326 (Fed. Cir. 2005) ........................................................13

*BASF Corp. v. United States,*
  482 F.3d 1324 (Fed. Cir. 2007) ........................................................13

*CamelBak Prods., LLC v. United States,*
  649 F.3d 1361 (Fed. Cir. 2011) ..................................................19, 27

*Carl Zeiss, Inc. v. United States,*
  195 F.3d 1375 (Fed. Cir. 1999) ..........................................13, 14, 20

*Crawfish Processors Alliance v. United States,*
  30 C.I.T. 639 (2006) ........................................................................34

*Cummins Inc. v. United States,*
  454 F.3d 1361 (Fed. Cir. 2006) ........................................................13

*EM Indus. v. United States,*
  22 C.I.T. 156 (1998) ........................................................................23

*Frosted Fruit Products Co. v. United States,*
  18 Cust. Ct. 119 (1947) ...................................................................34

*Interocean Chem. & Minerals Corp. v. United States,*
  13 C.I.T. 449 (1989) ........................................................................34

*Link Snacks, Inc. v. United States,*
  742 F.3d 962 (Fed. Cir. 2014) ..........................................................13

*Lonza Inc. v. United States,*
  46 F.3d 1098 (Fed. Cir. 1995) ..........................................................14

*Marubeni Am. Corp. v. United States,*
  35 F.3d 530 (Fed. Cir. 1994) ............................................................14

*Millenium Lumber Distr. Ltd. v. United States*,
   558 F.3d 1326 (Fed. Cir. 2009) ........................................................12

*Mita Copystar Am. v. United States*,
   160 F.3d 710 (Fed. Cir. 1998) ...................................................15, 28

*Mondelez Global LLC v. United States*,
   253 F.Supp.3d 1329 (CIT 2017) .....................................................30

*Montclair v. Ramsdell*,
   107 U.S. 147 (1883) .........................................................................30

*Nat'l Advanced Sys. v. United States*,
   26 F.3d 1107 (Fed. Cir. 1994) ........................................................13

*Orlando Food Corp. v. United States*,
   140 F.3d 1437 (Fed. Cir. 1998) ..................................................passim

*R.T. Foods, Inc. v. United States*,
   757 F.3d 1349 (Fed. Cir. 2014) ..................................................passim

*Rollerblade, Inc. v. United States*,
   282 F.3d 1349 (Fed. Cir. 2002) ......................................................23

*Schlumberger Tech. Corp. v. United States*,
   845 F.3d 1158 (Fed. Cir. 2017) ......................................................32

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
   776 F.3d 1351 (Fed. Cir. 2015) ......................................................26

*Standard Chlorine Chem. Co. v. United States*,
   13 CIT 198 (1989) ....................................................................18, 19

*United States v. Menasche*,
   348 U.S. 528 (1955) .........................................................................30

*Wilton Indus. v. United States*,
   741 F.3d 1263 (Fed. Cir. 2013) ......................................................28

**Statutes**

19 U.S.C. §§ 3001–3011 (1988)...........................................................................14

28 U.S.C. § 1581(a) ........................................................................................ 5

**Regulations**

19 C.F.R. § 102....................................................................................37, 38

19 C.F.R. § 102.1(n) ....................................................................................38

19 C.F.R. § 102.1(n)(6)................................................................................38

19 C.F.R. § 102.1(n)(7)................................................................................38

**Harmonized Tariff Schedule of the United States**

General Note 12(a)(1) ................................................................... 37

General Note 12(b) ........................................................................ 37

General Note 12(t) ......................................................................... 37

General Rule of Interpretation 1 ...............................................*passim*

General Rule of Interpretation 2(a) ............................................... 8

General Rule of Interpretation 2(b) ............................................... 8

General Rule of Interpretation 3 ...............................................8, 23

General Rule of Interpretation 3(a) ...................................8, 15, 22, 23

General Rule of Interpretation 3(b) ...........................................*passim*

General Rule of Interpretation 3(c) ...............................10, 15, 23, 28

General Rule of Interpretation 6 ...............................................15, 24

Chapter 7 ......................................................................................33, 34

v

Heading 0710...............................................................................8, 22

Chapter 8 .................................................................................... 34

Heading 0811.........................................................................*passim*

Subheading 0811.10............................................6, 22, 24, 27

Subheading 0811.20............................................6, 22, 24, 27

Subheading 0811.90.................................................*passim*

Subheading 0811.90.10.................................................5, 6

Subheading 0811.90.20.................................................5, 6

Subheading 0811.90.52.................................................5, 6

Subheading 0811.90.80.............................................*passim*

Subheading 0811.90.90................................................. 6

Chapter 9 ..................................................................................... 33

Chapter 11 ...............................................................................33, 34

Chapter 12 ................................................................................... 33

Heading 12.11 ........................................................................ 33

Chapter 20 ................................................................................... 34

Heading 2008.......................................................................... 34

Note 1(a) to Chapter 20............................................................. 34

Chapter 21 ................................................................................... 37

Heading 2106....................................................................*passim*

Subheading 2106.90.................................................................. 7

Subheading 2106.90.98....................................................*passim*

**Schedule 4 of the Tariff Schedules of the United States**

Heading 405.44 ........................................................................ 19

**Other Authorities**

Explanatory Note to GRI 1 ..................................................... 14

Explanatory Note to Chapter 8 .............................................. 17

Explanatory Note 08.11 ........................................................... 17

Explanatory Note 21.06 .................................................. 8, 31, 32, 33, 35

FRUIT, *American Heritage Dictionary* (3d ed. 1996)......................................1, 16

FRUIT, *CollinsDictionary.com,*
available at https://www.collinsdictionary.com/us/dictionary/english/fruit ......1, 16

FRUIT, *Webster's New International Dictionary* (2d ed. 1956).......................1, 16

H.R. Rep. No. 100–576, 1988 U.S.C.C.A.N. 1547.................................................14

Omnibus Trade and Competitiveness Act of 1988 ................................................14

PREPARATION, *Oxford English Dictionary* (2d ed. 1989) ...............................30

## STATEMENT PURSUANT TO RULE 47.5

In accordance with Rule 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for appellee makes the following statements:

1) There are no other appeals arising from the decision of the Court of International Trade that is the subject of this action now pending before this Court or any other court of appeals.

2) Counsel for Defendant-Appellee is aware of the following action, currently pending in the Court of International Trade, which will be directly affected by this Court's decision in the pending appeal: *Nature's Touch Frozen Foods (West) Inc., v. United States,* Court No. 22-00042.

# INTRODUCTION

The thrust of this appeal involves a question of statutory interpretation –
whether the common meaning of the phrase frozen "fruit" refers to fruit of all
kinds and includes mixtures of fruit.  It does.  *See, e.g.*, *Fruit*,
CollinsDictionary.com, https://www.collinsdictionary.com/us/dictionary/
english/fruit (last visited Oct. 2, 2023) (noting that "[t]he plural form is usually
fruit, but can also be fruits"); *Fruit*, *American Heritage Dictionary* (3d ed. 1996)
(plural "fruit or fruits"); *Fruit, Webster's New International Dictionary* (2d ed.
1956) ("Collectively, a dish, a selection, a diet, of fruits").  The arguments of
Appellant, Nature's Touch Frozen Foods (West) Inc. ("Nature's Touch"), fail as
they impose limitations on the term that are not supported by its plain
meaning.  Accordingly, the judgment of the trial court should be affirmed.

# ISSUES PRESENTED

1)     Whether the Court of International Trade correctly held that the
various imported frozen fruit mixtures are properly classified as "Fruit . . . frozen:
. . . Other" under subheading 0811.90.80, of the Harmonized Tariff Schedule of the
United States (HTSUS).

2)     Whether the Court of International Trade correctly held that the
various imported frozen fruit mixtures are not properly classified as "Food
preparations not elsewhere specified or included" under subheading 2106.90.98,

HTSUS.

3)     Whether the Court of International Trade correctly held that the subject merchandise is not entitled to duty-free treatment as originating products of Canada pursuant to the North American Free Trade Agreement (NAFTA).

<u>**STATEMENT OF THE CASE**</u>

## I.     <u>The Imported Merchandise</u>

The subject merchandise consists of fourteen frozen fruit mixture products, five of which also contain frozen vegetable ingredients.  Appx8-9 (citing Appx151-158 (Plaintiff's Rule 56.3 Statement Of Material Facts Not In Dispute (Pl.'s Facts) ¶¶ 10–24); Appx166-172 (Defendant's Response To Plaintiff's Rule 56.3 Statement Of Material Facts To Which There Is No Genuine Dispute (Def.'s Resp. Facts) ¶¶ 10–24)).  Nature's Touch produces the mixtures by importing fruits and vegetables from around the world to its Abbotsford, Canada facility, where they are cleaned, combined, and packaged for export to the United States.  Appx9 (citing Appx148 (Pl.'s Facts ¶¶ 4–6)); Appx165 (Def.'s Resp. Facts ¶¶ 4–6)).  With the exception of certain blueberries, all the fruit and vegetables in the subject mixtures arrive at Nature's Touch's facility already cut and frozen.  Appx9 (citing Appx182 (Defendant's Statement of Additional Undisputed Material Facts (Def. Add. Facts) ¶ 6); Appx188 (Plaintiff's Response to Defendant's 56.3 Statement (Pl.'s Resp. to Def.'s 56.3 Statement) ¶ 6)).  Consumers use the mixtures for a

variety of purposes, such as to make smoothies, sauces, chutneys, punches, dips, baked goods, and fruit salads; or they may thaw and eat the mixtures directly. Appx9 (citing Appx160 (Pl.'s Facts ¶¶ 34, 45); Appx174 (Def.'s Resp. Facts ¶¶ 34, 45)). However, "[n]ew applications for the products at issue may be developed based on customer usage," and Nature's Touch "does not know how a customer will ultimately use the products at issue." Appx9 (citing Appx 189 (Pl.'s Resp. to Def.'s 56.3 Statement, ¶¶ 12–13)). The mixtures contain no ingredients other than frozen fruit and vegetables, and the specific combinations of fruit and vegetables within each product are as follows:[1]

All-Fruit Mixtures:

> (1) Frozen Strawberry/Banana: 52% strawberry, 48% banana
>
> (2) Frozen Berry Mix: 22% blueberry, 32% strawberry, 28% blackberry, 18% raspberry
>
> (3) Frozen Triple Berry: 34% blueberry, 33% blackberry, 33% raspberry
>
> (4) Organic Mixed Berry: 35% strawberry, 25% blackberry, 25% blueberry, 15% raspberry
>
> (5) Organic Very Berry Burst: 30% strawberry, 30% blackberry, 30% blueberry, 10% raspberry

---

[1] Appx9-10 (citing Appx178-182 (Def. Add. Facts ¶¶ 3–5); Appx184-188 (Pl.'s Resp. to Def.'s 56.3 Statement ¶¶ 3–5)).

(6) Organic Strawberry/Blueberry/Mango: 34%
strawberry, 33% blueberry, 33% mango

(7) Organic Tropical Blend: 34% strawberry, 33%
mango, 33% pineapple

(8) Antioxidant Blend Frozen: 30% strawberry, 20%
cherry, 20% pomegranate, 15% blueberry, 15% raspberry

(9) Frozen Medley Mixed Fruit: 35% strawberry, 25%
peach, 15% pineapple, 15% mango, 10% grapes

Fruit-and-Vegetable Mixtures:

(10) Organic Green Mango Medley: 18% strawberry,
25% banana, 35% mango, 22% kale

(11) Organic Tropical Fruit and Greens: 46% pineapple,
37% mango, 8.5% spinach, 8.5% kale

(12) Organic Strawberry/Cherry/Kale: 34% strawberry,
33% cherry, 33% kale

(13) Organic Triple Berry with Kale: 27% blueberry,
20% blackberry, 23% apple, 15% raspberry, 15% kale

(14) Blueberry Blitz: 40% blueberry, 20% blackberry,
25% apple, 15% butternut squash

## II.  **Procedural History**

Nature's Touch imported the various frozen fruit and fruit-and-vegetable

mixtures in question from Canada between June 6, 2018 and November 21, 2018.

Appx4.  U.S. Customs and Border Protection (CBP) classified the merchandise

under HTSUS heading 0811, which covers "Fruit . . . frozen." *Id.*  Depending on

the ingredients of each mixture, CBP classified the merchandise in liquidation

under the following HTSUS subheadings: 0811.90.10 ("Bananas and plantains"),

0811.90.20 ("Blueberries"), 0811.90.52 ("Mangoes"), and 0811.90.80 ("Other").

Appx4-5.  Nature's Touch filed a protest on October 30, 2019, claiming that the

products were properly classified under HTSUS subheading 2106.90.98 ("Food

preparations not elsewhere specified or included:    . . . Other.") and claiming duty-

free treatment under NAFTA.  Appx5-6.  Nature's Touch's protest was deemed

denied on July 4, 2020.  Appx6.

Nature's Touch timely filed this action pursuant to 28 U.S.C. § 1581(a) on

July 15, 2020.  *Id.*  After completing discovery, the parties cross-moved for

summary judgment.  Appx7-8.  The trial court issued its opinion and entered

judgment on May 26, 2023.  Appx1-2.  Nature's Touch filed its notice of appeal on

June 23, 2023.  Blue Br. 2.

## III.   **The Trial Court's Decision**

The trial court interpreted the meaning of the tariff terms for headings 0811

and 2106, HTSUS.  Appx19-20, 25-31, 37-38.  Relying on the General Rules of

Interpretation (GRIs) for the HTSUS, precedent from this Court, and the

Explanatory Note to HTSUS heading 2106, the trial court determined that all the

merchandise is classifiable as "Fruit . . . frozen" under HTSUS heading 0811, and

that none of the merchandise is classifiable as "food preparations" under HTSUS

heading 2106.  Appx15–16.  After reapplying the GRIs at the subheading levels

under heading 0811, the trial court concluded that all the merchandise is

classifiable under HTSUS subheading 0811.90.90 ("Fruit . . . frozen: . . . Other.").

Appx16. The trial court then considered the nine all-fruit mixtures separately from

the five fruit-and-vegetable mixtures. *Id.*

## A.    The Nine All-Fruit Mixtures

The trial court first considered heading 0811, HTSUS, under which CBP had

liquidated the imported goods. Chapter 8 covers "Edible Fruit and Nuts; Peel of

Citrus Fruit or Melons," and heading 0811 provides as follows:

> **0811**: Fruit and nuts, uncooked or cooked by steaming or
> boiling in water, frozen, whether or not containing added
> sugar or other sweetening matter:
>> **0811.10**: Strawberries: 11.2%
>> **0811.20**: Raspberries, blackberries,
>>         mulberries…4.5–9%
>> **0811.90**: Other:
>>> **0811.90.10**: Bananas and plantains: 3.4%
>>> **0811.90.20**: Blueberries: Free
>>> **0811.90.52**: Mangoes: 10.9%
>>> **0811.90.80**: Other: 14.5%

*See* Appx5; 0811, HTSUS (2018).

The trial court began by framing the case – "[t]he threshold issue in this case

is whether the merchandise is properly classified in HTSUS heading 0811 as "Fruit

. . . frozen," because Nature's Touch's proposed alternative classification, HTSUS

heading 2106, is a basket provision that applies to 'Food preparations *not*

*elsewhere specified or included*.' 2106, HTSUS." Appx17.

The trial court first held that "[h]eading 0811 is an *eo nomine* provision that describes frozen fruit by name and includes mixtures of frozen fruit."  The trial court used dictionaries to ascertain the common meaning of the term "fruit" as used in heading 0811.  It held that "fruit" "refers generally to fruit of all kinds," "is not limited to individual fruit," and "includes mixed fruit."  Appx20.  The trial court therefore concluded that "[b]ecause the nine all-fruit frozen mixtures are described in whole by the term 'Fruit . . . frozen,' they are classified in heading 0811 by operation of GRI 1."  Appx22.

## B.    The Five Fruit-And-Vegetable Mixtures

Next, the trial court held that "the fruit-and-vegetable mixtures contain features substantially in excess of frozen fruit" such that they are not described in whole by the term "Fruit . . . frozen" pursuant to GRI 1.  Appx23.  The trial court observed that, "[i]n addition to comprising between 15% and 33% of the mixtures' total content by weight, the vegetable content of these mixtures forms a significant part of the products' commercial identity."  *Id.*  The trial court then conducted a GRI 1 analysis to see if these mixtures could be classified under the competing provision, heading 2106, for "food preparations."  Appx25.  The heading provides as follows:

> **2106**: Food preparations not elsewhere specified or included:
> **2106.90**: Other:
> Other:
> Other:

|  | Other: |  |
|---|---|---|
|  | Other: |  |
| **2106.90.98**: |  | Other…6.4% |

*See* Appx6; 2106, HTSUS (2018).  However, after consulting the case law and the

Explanatory Note to heading 2106, the trial court held that while it is undisputed

that the mixtures are food, they do not qualify as preparations.  Appx25-31.

Specifically, the trial court held that because the fruit-and-vegetable mixtures "are

excluded from heading 2106 by Explanatory Note 21.06 (15), and because freezing

is distinguished from preparation by both the HTSUS and case law, the Court

[held] that Nature's Touch's mixtures of frozen fruits and vegetables are not 'food

preparations' within the meaning of heading 2106."  Appx31.

Having established that the fruit-and-vegetable mixtures cannot be classified

pursuant to GRI 1, the trial court moved to the next applicable rule, GRI 3(a).[2]  *Id.*

The trial court considered two applicable headings: 0811 ("Fruit . . . frozen") and

0710 ("Vegetables . . . frozen"), as each heading refers to part only of the frozen

fruit-and-vegetable mixtures.  Appx32.  The trial court then conducted a GRI 3(b)

analysis and held that, because the undisputed facts showed that the mixtures

possess more fruit than vegetable content, the fruit ingredients predominate and

---

[2] GRI 2(a) applies to incomplete or unassembled products, which is not pertinent to this case.  GRI 2(b) directs the inquiry to GRI 3: "[t]he classification of goods consisting of more than one material or substance shall be according to the principles of rule 3."

impart their essential character. *Id.* Therefore, the trial court held that the fruit-and-vegetable mixtures are also properly classified in heading 0811. Appx33.

## C.    Application Of The GRIs To Determine The Correct Subheading

Lastly, the trial court applied the GRIs at the six-digit subheading level and again, separately, at the eight-digit level to classify all the imported products. *Id.* Applying GRI 1 at the six-digit level, the trial court noted that ascertaining the meaning of the tariff term "other" of subheading 0811.90 ("Other") was necessary. Appx33-38. The trial court held that the plain meaning of "other" is "none of the above" and that precedential case law instructed that when a product is not described in whole by a named subheading, it falls into the residual or basket subheading "Other." Appx37. Following the same procedure outlined by this Court in *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014), the trial court held that the other two subheadings at the six-digit level ("Strawberries" and "Raspberries . . . gooseberries (other than kiwi fruit)") did not describe the mixtures. Appx43. Therefore, the trial court held that the products are properly classified under subheading 0811.90 ("Other"). Appx43. Finally, the trial court reapplied GRI 1 at the eight-digit subheading level to similarly hold that, "because the mixtures are not described in whole by the terms of any of the eight-digit subheadings that enumerate fruits, they fall into the residual subheading 0811.90.80, 'Other.'" Appx43-44.

**D.**    **Eligibility For Duty-Free Treatment Under NAFTA**

Because the trial court classified the imported products under heading 0811, it held that no shift into heading 2106 from another HTSUS chapter occurred, such that Nature's Touch's arguments concerning duty-free treatment under NAFTA were not appropriate.  Appx46.

## SUMMARY OF ARGUMENT

This Court should affirm the trial court's sound judgment because the undisputed facts show that the merchandise is described by the tariff terms "Fruit . . . frozen" of heading 0811 and is further properly classified under subheading 0811.90.80, and the trial court committed no legal error in interpreting the tariff terms "fruit," "other," and "food preparations" as those terms are defined by dictionaries, the Explanatory Notes, and the legal standards set by this, and other, Courts.

Nature's Touch argues that the merchandise is not properly classified under subheading 0811.90.80, HTSUS, and is instead properly classified under a basket provision, subheading 2106.90.98, which covers "Food preparations not elsewhere specified or included: . . . Other."  Alternatively, Nature's Touch argues that, even if the merchandise is properly classified under heading 0811, HTSUS, it is not covered by subheading 0811.90.80 pursuant to GRI 1, and that instead, it must be classified pursuant to GRIs 3(b) and (c) at the eight-digit level.  Finally, Nature's

10

Touch argues that once classification under subheading 2106.90.98, HTSUS, is established, the merchandise satisfies all tariff-shift rules of origin to be considered as goods originating from Canada pursuant to NAFTA, such that duty-free treatment applies.

The trial court rejected Nature's Touch's proposed classifications, correctly holding that the all-fruit mixtures are properly classified under heading 0811, HTSUS, pursuant to GRI 1 because the term "Fruit . . . frozen" describes these products. The trial court also properly held that the fruit-and-vegetable mixtures are not described in whole by either heading 0811 or 2106 pursuant to GRI 1. The trial court correctly rejected Nature's Touch's argument that the fruit-and-vegetable mixtures were "food preparations" because they did not undergo the additional processing required to qualify it as a "preparation" pursuant to the plain meaning of that term. The trial court therefore properly conducted a GRI 3(b) analysis, correctly determining that the fruit content predominates and supplies the essential character of these mixtures such that classification under heading 0811, HTSUS, is proper. Further, the trial court properly rejected Nature's Touch's arguments that the merchandise is not described, pursuant to GRI 1, by the term "Other" of subheadings 0811.90 and 0811.90.80. Finally, because the trial court classified all the imported products under heading 0811, it correctly held that no shift into heading 2106 from another HTSUS chapter occurred, such that Nature's

11

Touch's arguments concerning duty-free treatment under NAFTA are not appropriate.

This Court should affirm the trial court's sound judgment because the undisputed facts show that the merchandise is described by the tariff terms "Fruit . . . frozen" of heading 0811 and is further properly classified under subheading 0811.90.80, and the trial court committed no legal error in interpreting the tariff terms "fruit," "other," and "food preparations" as those terms are defined by dictionaries, the Explanatory Notes, and the legal standards set by this, and other, Courts.

For these reasons, and those discussed below, the judgment of the trial court should be affirmed.

## ARGUMENT

### I.    Standard Of Review

This Court reviews the trial court's grant of summary judgment "for correctness as a matter of law" and "decide[s] *de novo* the proper interpretation of the tariff provisions as well as whether there are genuine issues of fact to preclude summary judgment." *Millenium Lumber Distr. Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009).

### II.    The Legal Framework For Tariff Classification

Merchandise imported into the United States is classified under the provisions of the HTSUS.  The determination of whether a particular product falls

within a tariff classification is a two-step process: first, the meaning of terms within the provision must be ascertained, and second, a determination must be made as to whether the merchandise at issue falls within the description of such terms as properly construed. *See Nat'l Advanced Sys. v. United States*, 26 F.3d 1107, 1109 (Fed. Cir. 1994). "[W]hen there is no dispute as to the nature of the merchandise, then the two-step classification analysis 'collapses entirely into a question of law.'" *Link Snacks, Inc. v. United States*, 742 F.3d 962, 965–66 (Fed. Cir. 2014) (quoting *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006)).

In applying this process, courts look to the six GRIs and the Additional United States Rules of Interpretation to construe and apply the HTSUS. *See Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998); *BASF Corp. v. United States*, 482 F.3d 1324, 1325–26 (Fed. Cir. 2007). The HTSUS section and chapter notes "are not optional interpretive rules," but instead have the force of statutory law. *See Aves. In Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (citation omitted). HTSUS terms are construed in accordance with their common and commercial meaning, which are presumed to be the same. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). Further interpretive assistance may be provided in appropriate circumstances by the Explanatory Notes published by the World Customs

Organization. *Marubeni Am. Corp. v. United State*s, 35 F.3d 530, 535 n.3 (Fed.

Cir. 1994).[3]

In classifying merchandise under the HTSUS, goods are first classified at the

four-digit heading level pursuant to GRI 1.  GRI 1 provides, in relevant part, that

"for legal purposes, classification shall be determined according to the terms of the

headings and any relative section or chapter notes and, provided such headings or

notes do not otherwise require, according to the [remaining GRIs.]"  The

Explanatory Note to GRI 1 states that "the terms of the headings and any relative

Section or Chapter Notes are paramount, *i.e.*, they are the first consideration in

determining classification[.]"  World Customs Organization, Harmonized

Commodity Description and Coding System: Explanatory Note GRI 1 (4th ed.

---

[3] In the Omnibus Trade and Competitiveness Act of 1988, §§ 1201–1217, Congress passed legislation implementing the Harmonized Commodity Description and Coding System, the foundation of the HTSUS up to the six-digit coding level. *See* 19 U.S.C. §§ 3001–3011 (1988).  "The Explanatory Notes were drafted subsequent to the preparation of the Harmonized System nomenclature" and "[a]lthough generally indicative of proper interpretation of the various provisions, the Explanatory Notes are not legally binding and are to be consulted for guidance but not treated as dispositive." *Carl Zeiss*, 195 F.3d at 1378 n.1 (citing H.R. Rep. No. 100–576, 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582); *see also Lonza Inc. v. United States*, 46 F.3d 1098, 1109 (Fed. Cir. 1995) ("While the *Explanatory Notes* do not constitute controlling legislative history, they do offer guidance in interpreting HTS subheadings.").

2007).  GRI 6 extends the principles of GRI 1 in selecting the appropriate

classification at the six-digit subheading level.

The GRIs are applied in numerical order and the Court will turn to

subsequent GRIs to determine the appropriate heading only if the proper

classification of the imported goods cannot be accomplished by considering

potential headings under GRI 1, *i.e.*, if there is more than one potential heading.

*Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998).  GRI 3

provides a hierarchy of classifications where "goods are, prima facie, classifiable

under two or more headings."  GRI 3(a) provides, in relevant part, that "the most

specific description shall be preferred to headings providing a more general

description[.]"  GRI 3(b) provides, in relevant part, that mixtures and composite

goods consisting of different materials or made up of different components, "which

cannot be classified by reference to 3(a), shall be classified as if they consisted of

the material or component which gives them their essential character[.]"  GRI 3(c)

provides, "When goods cannot be classified by reference to 3(a) or 3(b), they shall

be classified under the heading which occurs last in numerical order among those

which equally merit consideration."

\* \* \*

In Section III below, we show that the trial court correctly determined the

plain meaning of the tariff term "fruit" of heading 0811, HTSUS.  Next, in Section

IV, we show that the trial court correctly determined that the imported frozen fruit

mixtures are classifiable under subheading 0811.90.80, HTSUS.  Then in Section

V, we demonstrate why the frozen fruit mixtures are not properly covered by "food

preparations" under heading 2106, HTSUS.  Finally, in Section VI, we show why

the frozen fruit mixtures are not eligible for duty-free treatment under NAFTA.

## III.    The Trial Court Correctly Interpreted The Term "Fruit" Of Heading 0811 To Include Fruit Of All Kinds, Including Mixed Fruit

The trial court's holding classifying the frozen fruit mixtures under

subheading 0811.90.80 should be affirmed because it is consistent with the plain

meaning of the tariff statute and supported by the undisputed facts.

Heading 0811 ("Fruit . . . frozen") is an *eo nomine* provision that describes

frozen fruit by name and includes mixtures of frozen fruit.  The common meaning

of the term "fruit," according to dictionary definitions, refers generally to fruit of

all kinds, is not limited to individual fruit, and includes mixed fruit.  *See, e.g.*,

*Fruit,* CollinsDictionary.com, https://www.collinsdictionary.com/us/dictionary/

english/fruit (last visited Oct. 2, 2023) (noting that "[t]he plural form is usually

fruit, but can also be fruits"); *Fruit*, *American Heritage Dictionary* (3d ed. 1996)

(plural "fruit or fruits"); *Fruit, Webster's New International Dictionary* (2d ed.

1956) ("Collectively, a dish, a selection, a diet, of fruits").

Pursuant to GRI 1, the trial court correctly interpreted the term "fruit" of

heading 0811 according to its plain meaning, which includes mixed fruit.  Nature's

Touch challenges the trial court's interpretation of "fruit" as including mixed fruit. Blue Br. 14. Nature's Touch begins by noting that "[w]here a mixture cannot be classified by reference to GRI 1, then the HTSUS directs that subsequent GRIs must be consulted to determine the tariff classification." *Id.* at 15. Nature's Touch acknowledges that HTSUS heading 0811 ("Fruit . . . frozen") "covers 'frozen fruits[,]'" but then argues that the heading "does not contain any language" at the four-digit heading level or at the six- or eight-digit subheading levels which provide for mixtures of frozen fruit. *Id.* at 17-18. Nature's Touch's argument is misplaced.

The trial court's interpretation is correct because the common meaning of "fruit," according to dictionary definitions, includes mixed fruit, and neither heading 0811 nor the Explanatory Notes include any limitation that excludes mixtures of frozen fruit. Heading 0811 contains the terms "Fruit . . . frozen." As shown above, the plain meaning of "fruit" includes mixed fruit, and there is no language in heading 0811 ("Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter:") that excludes mixtures of frozen fruit. The Explanatory Notes to Chapter 8 and heading 0811, reproduced in the attached addendum, also lack any language excluding mixtures of frozen fruit. Addendum 41-43.

Moreover, Nature's Touch improperly considers the terms of the

subheadings prior to completing an analysis of the terms of the heading, which is contrary to the rules for tariff classification. Blue Br. 17-18, 23; *Orlando Food*, 140 F.3d at 1440 ("Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise."). Further, Nature's Touch fails to complete a GRI 1 analysis of heading 0811 because it ignores the trial court's analysis regarding the common meaning of the tariff term "Fruit." *See* Blue Br. 17-21. Indeed, Nature's Touch does not address the trial court's interpretation of the plain meaning of the term "fruit," which includes fruit mixtures, nor does it address the trial court's analysis that heading 0811 covers "Fruit *and nuts* . . . frozen," which shows that heading 0811 covers mixtures of frozen fruit, mixtures of frozen nuts, and mixtures of frozen fruit and nuts. *See id.*; Appx39-40.

Nature's Touch cites *Standard Chlorine Chem. Co. v. United States*, 13 CIT 198 (1989), for the proposition that the tariff concept of mixtures does not apply where two or more items, classified in the same tariff provision, are imported together. Blue Br. 21-22. But *Standard Chlorine* is inapposite here for several reasons. First, the case was decided under the Tariff Schedules of the United States (TSUS). *Standard Chlorine*, 13 CIT at 198. Second, the case involved different merchandise under different tariff terms, namely two isomers of trichlorobenzene; here, all the imported products contain frozen fruits that are

18

described by the terms "fruit" and "frozen" of heading 0811.  *Id.*  Third, the Court observed the existence of a "specific congressional exclusion of isomeric mixtures from the purview of certain *eo nomine* provisions, such as item 405.44, TSUS, which provides for toluenediisocyanates (unmixed)," whereas here, there is no specific congressional exclusion of frozen fruit mixtures from the purview of the *eo nomine* provision for "fruit and nuts . . . frozen" of heading 0811.  *Id.* at 202. Finally, the Court observed that in other cases classifying goods as mixtures, each of them pertained to a mixture of two or more separate and unique substances, each of which would have fallen within a specific and different *eo nomine* provision if imported alone.  *Id.* at 201.  Here, however, the tariff heading term "fruit" includes mixed fruit, such that individual frozen fruits or mixed frozen fruits are described by the term "fruit" of heading 0811.  For example, bananas, strawberries, and a mix of both are described by the plain meaning of "fruit."

Nature's Touch also argues that "*eo nomine* provisions do not cover 'mixtures.'"  Blue Br. 26.  But this argument is not supported by the law.  As this Court has held, *eo nomine* provisions "include[] all forms of the named article, even improved forms," and as long as the product does not "possess features substantially in excess of those within the common meaning of the term," it will be covered by the provision that names it.  *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011) (internal citations omitted).  For this reason,

mixed fruit is encompassed by the common meaning of the term "fruit."

Finally, Nature's Touch also argues that the canon *expressio unius est exclusio alterius*—the expression of one thing implies the exclusion of all others—instructs that heading 0811 cannot encompass fruit mixtures.  Blue Br. 29.  Nature's Touch argues that "[i]n constructing Heading 0811, HTSUS, (describing frozen fruits), the drafters of the tariff expressly provided for individual frozen fruits, while declining to create a provision for 'mixtures' of such fruits."  *Id.*  But Nature's Touch fails to point to any language in the terms of heading 0811 that provide only for individual frozen fruits.  As we have shown, the specific term in heading 0811 is "fruit," whose plain meaning is not limited to individual fruit, and includes mixed fruit.  Nature's Touch further argues that "[w]here Congress specifies the things which fall within the scope of an enactment, and fails to include others, the exclusion must be presumed intentional and respected."  Blue Br. 29-30.  Indeed, because HTSUS terms are construed in accordance with their common and commercial meaning, which are presumed to be the same, the fact that the drafters of heading 0811 included the term "fruit"—whose common and commercial meaning is not limited to individual fruit, and includes mixed fruit—means that the exclusion of any limiting language regarding the common meaning of fruit must be presumed intentional and respected.  *See Carl Zeiss*, 195 F.3d at 1379.  Therefore, the drafters intended for heading 0811 to include mixed fruit.

For all the foregoing reasons, the trial court correctly interpreted the term "fruit" of heading 0811 to include mixed fruit.

## IV. The Trial Court Correctly Classified The Subject Merchandise As "Fruit . . . Frozen: Other: Other" Under Subheading 0811.90.80

The trial court correctly classified the subject merchandise as "Fruit . . . frozen" under heading 0811, and further under subheading 0811.90.80 ("Other: Other.").

Having established that the term "fruit" of heading 0811 includes mixed fruit, the nine all-fruit frozen mixtures are properly classified under heading 0811. As the trial court correctly held, "[b]ecause the nine all-fruit frozen mixtures are described by the term 'Fruit . . . frozen,' they are classified in heading 0811 by operation of GRI 1." Appx22.

The five fruit-and-vegetable mixtures, however, contain vegetables in addition to the fruit, such that they are not described in whole by the term "Fruit . . . frozen" pursuant to GRI 1. As the trial court appropriately observed, "[i]n addition to comprising between 15% and 33% of the mixtures' total content by weight, the vegetable content of these mixtures forms a significant part of the products' commercial identity." Appx23. The trial court properly reasoned that an analysis under GRI 1 is necessary to see if the mixtures can be classified under the competing basket provision, heading 2106, for "food preparations." Appx25. However, as discussed further below in Section V, the term "food preparations"

21

does not describe the fruit-and-vegetable mixtures. Having established that these mixtures cannot be classified pursuant to GRI 1, the trial court correctly reasoned that an analysis under the next rule applicable to this case, GRI 3(a), is proper. Appx31. The trial court properly determined that two HTSUS headings may be applicable here: 0811 ("Fruit . . . frozen") and 0710 ("Vegetables . . . frozen"), as each heading refers to part only of the fruit-and-vegetable mixtures. Appx32. As such, a GRI 3(b) analysis is necessary to establish the essential character of these mixtures and determine the correct heading. As the trial court correctly determined, because the undisputed facts show that the mixtures possess more fruit—specifically, their fruit content ranges between 67% and 85%—than vegetable content, the fruit ingredients predominate and impart their essential character. *Id.* Therefore, as the trial court correctly held, the fruit-and-vegetable mixtures are also properly classified in heading 0811. Appx33.

Having established the correct heading for all the imported products, pursuant to GRI 6, the next step is to reapply the GRIs at the six-digit subheading level and again, separately, at the eight-digit level to classify all the imported products. GRI 6; *Orlando Food*, 140 F.3d at 1440. When applying GRI 1 at the six-digit level, the trial court held that the other two subheadings at the six-digit level (0811.10 for "Strawberries," and 0811.20 for "Raspberries, blackberries, mulberries, loganberries, black, white or red currant and gooseberries (other than

kiwi fruit)") do not describe the products in whole, because all the products are

mixtures that contain fruits or vegetables not named by the individual fruits listed

in these two subheadings.[4]  Appx43.  As such, the trial court reasoned that only

subheading 0811.90 ("Other") describes the products in whole.  *Id.; see also R.T.*

*Foods*, 757 F.3d at 1354 ("when an article 'is in character or function something

other than as described by a specific statutory provision—either more limited or

more diversified—and the difference is significant,' it is not properly classified

within an *eo nomine* provision."); *Rollerblade, Inc. v. United States*, 282 F.3d

1349, 1354 (Fed. Cir. 2002) (stating that residual subheadings such as "other

[sports equipment]" are "'intended as a *broad catch-all* to encompass the

classification of articles for which there is not a more specifically applicable

subheading'") (quoting *EM Indus. v. United States*, 22 C.I.T. 156, 165 (1998))

(emphasis added).  Reapplying GRI 1 at the eight-digit subheading level, the trial

court again correctly held that the mixtures are not described in whole by the terms

---

[4] At the trial court, we argued that no subheading of heading 0811 described the imported products in whole pursuant to GRI 1, and that a GRI 3 analysis was therefore necessary.  Appx249-250 (Def. Cross-Mot., 18-19).  We further argued that the products were not classifiable pursuant to either GRI 3(a) or (b), and therefore, resort to GRI 3(c) was necessary, resulting in classifying the products under subheading 0811.90.80.  Appx250-254 (Def. Cross-Mot., 19-23).  Although the trial court did not adopt our interpretation of the term "other" or our arguments regarding the necessity of a GRI 3 analysis at the subheading level, the trial court's interpretation of the term "other" pursuant to GRI 1 is nonetheless reasonable and supported by the law.

of any of the eight-digit subheadings that enumerate fruits; therefore, the trial court held that the products once again fall into the residual or basket subheading 0811.90.80 ("Other").  Appx43-44.

Nature's Touch challenges the trial court's interpretation of the term "other" of subheadings 0811.90 and 0811.90.80.  Blue Br. 16-30.  Nature's Touch begins by arguing that "an 'other' heading is meant to exclude from its coverage items specifically named in preceding subheadings."  *Id.* at 16-17.  However, Nature's Touch fails to cite to any authority for support of this proposition.  *See id.* Pursuant to GRIs 1 and 6, the first step is to discern the plain meaning of the tariff terms at the first subheading level—0811.10 ("Strawberries"), 0811.20 ("Raspberries . . . and gooseberries (other than kiwi fruit)"), and 0811.90 ("Other").  As the trial court correctly determined, the plain meaning of the tariff term "other" is "none of the above."  Appx37; *R.T. Foods*, 757 F.3d at 1357. Because the terms of subheadings 0811.10 and 0811.20 do not describe in whole any of the imported fruit mixtures, the only term that describes them is "other," *i.e.*, "none of the above."

Nature's Touch further argues that none of the subheadings under heading 0811 provide for mixtures.  Blue Br. 23.  But as we have shown above, the plain meaning of the term "fruit" at the heading 0811 level does provide for mixed fruit; therefore, at least one of the subheadings must also cover mixed fruit.  Moreover, a

basket provision ("Other") is a broad catch-all that may include mixtures containing ingredients enumerated by other subheadings within the proper heading. *R.T. Foods*, 757 F.3d at 1354, 1357.

Nature's Touch also argues that "since the various subheadings of Heading 0811, HTSUS, include only single uniquely identified fruits, the provision for 'other' frozen fruits of subheading 0811.90.80, HTSUS, similarly fails to describe the frozen fruit mixtures at bar." Blue Br. at 24. But again, contrary to the guidance in *Orlando Food*, 140 F.3d at 1440, Nature's Touch impermissibly looks at the subheading levels when the GRIs and case law require that the terms of the heading be considered prior to the terms of the subheadings. Nature's Touch's argument regarding subheadings not including mixtures is flawed because a GRI 1 analysis at the heading level—as the trial court correctly conducted—determined that the common meaning of the term "fruit" encompasses individual fruits as well as mixed fruit. Therefore, at least one of the subheadings under heading 0811 must also include mixed fruit.

Nature's Touch also argues that the canon of *noscitur a sociis* instructs that the meaning of a tariff term should be judged with reference to the tariff terms which surround it. Blue Br. 24-26. Pursuant to this canon, Nature's Touch argues that the term "other" only covers individual fruits because the subheadings list individual fruits and not mixtures. *Id.* at 24-25. However, Nature's Touch

misapplies the canon of *noscitur a sociis*.  To begin, *noscitur a sociis* is "not an

inescapable rule," and should be applied only when there is ambiguity in the text.

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351,

1359 n.1 (Fed. Cir. 2015).  Here, there is no ambiguity in the text.  Indeed, we have

already demonstrated that the term "fruit" of heading 0811 may include mixed fruit

pursuant to its plain meaning; therefore, the term "other" in the subheadings under

heading 0811 may also include mixed fruit.  Moreover, when the terms of the

subheadings do not describe in whole any of the imported mixtures, the only term

that describes them is "other," *i.e.*, "none of the above."  Further, as this Court has

held, a basket provision ("Other") is a broad catch-all that may include mixtures

containing ingredients individually enumerated by other subheadings within the

proper heading.  *R.T. Foods*, 757 F.3d at 1354, 1357.  Finally, even if the rule of

*noscitur a sociis* were relevant here, it is being misapplied by Nature's Touch.

Heading 0811 covers "Fruit and *nuts* . . . frozen." (emphasis added).  As the trial

court correctly determined, because none of the heading's subheadings mention

nuts, all frozen nut products, including mixtures of frozen nuts and mixtures of

frozen fruit and nuts, must fall under subheading 0811.90.80 ("Other.").

Therefore, the term "other" of heading 0811 necessarily embraces mixtures.

Nature's Touch further argues that "*eo nomine* provisions do not cover

'mixtures,'" such that the "other" subheadings cannot cover mixtures.  Blue Br. 26.

But this argument is not supported by the law, and Nature's Touch has failed to cite to any authorities in support of this proposition. As this Court has held, *eo nomine* provisions "include[] all forms of the named article, even improved forms," and as long as the product does not "possess features substantially in excess of those within the common meaning of the term," it will be covered by the provision that names it. *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011) (internal citations omitted). For this reason, mixed fruit is encompassed by the common meaning of the term "fruit" of heading 0811. And because the heading encompasses fruit mixtures, the subheadings must necessarily embrace mixtures as well. But Nature's Touch also argues that "all of the subheadings within Heading 0811, HTSUS, are *eo nomine* provisions that identify specific articles by name." Blue Br. 26. Not so; as we have shown above, the "other" subheadings under heading 0811—*i.e.*, 0811.90 and 0811.90.80—are not *eo nomine* provisions, but are instead basket or residual provisions. *R.T. Foods*, 757 F.3d at 1354, 1357. As such, they are broad catch-all provisions that encompass goods of heading 0811 that are not described in whole by the terms of the other subheadings, and therefore may include mixtures containing ingredients individually enumerated by other subheadings within the proper heading. *See id.*

Finally, Nature's Touch states that "frozen fruits not described in subheadings 0811.10 or 0811.20, HTSUS, fall to be classified in the 'Other'

provision of subheading 0811.90, HTSUS." Blue Br. 29. Nature's Touch claims that unless a particular tariff provision for a mixture is identified which would allow for classification pursuant to GRI l, "the mixture would fall to be classified under the provisions of GRI 3(b) and (c)." *Id.* at 27-28. Although it is unclear from its brief, it appears that Nature's Touch further argues that, should the correct classification heading for the imported goods be 0811, the correct six-digit subheading would be 0811.90, but a GRI 1 analysis at the eight-digit subheading level would not be possible, such that a GRI 3(b) or (c) analysis would be necessary to determine the correct eight-digit subheading. *See id.* at 13, 16, 21, 27-29. Nevertheless, Nature's Touch is mistaken. Only if no heading describes the product in whole may the Court proceed to GRIs 2 through 5, in order, only proceeding to the next GRI if the previous GRI cannot classify the product. *See Mita Copystar*, 160 F.3d at 712; *Wilton Indus. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). But "if the proper heading can be determined under GRI 1, the court is not to look to the subsequent GRIs." *R.T. Foods*, 757 F.3d at 1353. Here, the proper subheadings can be determined pursuant to GRI 1 at both the six- and eight-digit levels because the tariff term "other" of subheadings 0811.90 and 0811.90.80 describes the products in whole. Consequently, it is unnecessary to apply the subsequent GRIs to determine the appropriate classification at either subheading level.

For all the foregoing reasons, the trial court correctly classified the subject

merchandise as "Fruit . . . frozen" under subheading 0811.90.80 ("Other: Other.").

## V. The Trial Court Correctly Rejected Classification Of The Frozen Fruit Mixtures As "Food Preparations Not Elsewhere Specified Or Included: . . . Other" Under Subheading 2106.90.98

Nature's Touch claims that the trial court erred in determining that the

frozen fruit mixtures are not classifiable in HTSUS heading 2106, specifically

under subheading 2106.90.98 ("Food preparations not elsewhere specified or

included:   . . . Other.").  Blue Br. 31.  Nature's Touch's argument is without

merit.

The trial court correctly rejected this classification, holding that the

merchandise does not meet the legal criteria for "food preparations."  Appx26.

The trial court's determination that the frozen fruit mixtures did not satisfy the

term "food preparations" should be affirmed as it is in accordance with the plain

meaning of the term and the legal standards set by this, and other Courts, and the

trial court did not err in applying the legal criteria for "food preparations" to the

undisputed material facts of the imported merchandise.

The trial court's holding that the frozen fruit mixtures do not constitute

"food preparations" under heading 2106 is consistent with the plain meaning of the

term and should be affirmed.  *Id.*  Although the term "food preparation" is not

defined in the heading, case law, as well as the Explanatory Notes, shed light on

the term.  "Inherent in the term 'preparation' is the notion that the object involved is destined for a specific use." *Orlando Food*, 140 F.3d at 1441 (citing the *Oxford English Dictionary* (2d ed. 1989) definition of "preparation" as "a substance specially prepared, or made up for its appropriate use or application, *e.g.*, as food or medicine, or in the arts or sciences.").  However, for the purposes of the HTSUS, use as food is not, by itself, sufficient to turn a product into a "food preparation."  Appx25. "Products are not classifiable under heading 2106, HTSUS, merely because they are specifically made for use in food." *Mondelez Global LLC v. United States*, 253 F.Supp.3d 1329, 1332 (CIT 2017) (holding that an article must be *both* "food" *and* a "preparation").  For a product to qualify as a "food preparation," it must undergo processing additional to what is already inherent in the term "food," otherwise the term "preparation" would become mere surplusage.  "It is our duty 'to give effect, if possible, to every clause and word of a statute[.]'" *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)).  Nature's Touch is therefore incorrect when it argues that the mixtures are food preparations because they "are specially prepared for multiple appropriate uses and applications as food."  Blue Br. 34.

Nature's Touch argues that the many processing operations performed on the mixtures qualify them as food preparations, describing such activities as recipe design, cleaning, inspection, quality control, packaging, and readying for

30

importation.  Blue Br. 5, 35-36.  However, as the trial court correctly noted, recipe design is product development, not a step to prepare or process food, and the other operations are common to all commercial food products, which must necessarily be cleaned, sorted, inspected, packed, and readied for sale.  Appx26.  Because the plain meaning of the term "preparation" requires more than what is already inherent to the term "food," these steps are insufficient to turn Nature's Touch's mixtures into food preparations.  *Id.*  Rather, the fruit and vegetable ingredients in the imported mixtures undergo three processing steps that turn them into Nature's Touch's unique products: cutting, freezing, and combining.  *See id.; see also* Appx165 (Def.'s Resp. Facts ¶ 5–6); Appx188 (Pl.'s Resp. to Def.'s 56.3 Statement ¶ 5–8) (agreeing that "all of the fruit and vegetables in the products at issue arrive at plaintiff's packaging facility already cut and frozen[,]" recounting processing steps, and agreeing that "[o]nce frozen, the individual pieces of fruit in the products at issue undergo no further change in character prior to the products' retail sale.").

Explanatory Note 21.06 (2017) sheds further light on the meaning of "food preparations" within the context of heading 2106.  *See* Addendum 44-47.  It lists various exemplar products that require significant processing beyond simply mixing fresh food ingredients, such as conversion into powders or tablets, undergoing hydrolysis or autolysis, processing into syrups or concentrations,

among other forms of additional significant processing. *See id.* The qualities shared by such exemplar products may be used by courts to derive the meaning of the HTSUS heading. *See, e.g.*, *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1165-66 (Fed. Cir. 2017) (holding that the products listed by the Explanatory Note for a heading covering "ceramic wares" all had "definite forms" and because the granulated bauxite in question "does not have a definite form, it cannot fall within that Heading's terms.").

As the trial correctly held, most of the exemplar products require significant processing, such as "Flavouring powders for making beverages," "Protein hydrolysates consisting mainly of a mixture of amino-acids and sodium chloride," and "Edible tablets with a basis of natural or artificial perfumes." *See* Explanatory Note 21.06, Addendum 44-47; Appx28. However, because "certain exemplar products do not indicate on their face whether or not they require significant processing," the trial court declined "to attempt a nebulous inquiry into the intensity or significance of the processing a product must undergo to become a food preparation." Appx28. The trial court indicated that instead, it would "look to the way the processing steps specific to Nature's Touch's products—cutting, freezing, and combining fruits and vegetables—are treated in the HTSUS, the Explanatory Notes, and case law." *Id.*

Explanatory Note 21.06 (15) excludes mixtures of cut fruits and vegetables from heading 2106 if they are fit for consumption "as such."  Addendum 47. Explanatory Note 21.06 (15) describes an exemplar food preparation consisting of:

> Mixtures of plants, parts of plants, seeds or fruit (whole, cut, crushed, ground or powdered) of species falling in different Chapters (e.g. Chapters 7, 9, 11, 12) or of different species falling in heading 12.11, *not consumed as such*, but of a kind used either directly for flavouring beverages or for preparing extracts for the manufacture of beverages.

*Id.* (emphasis added).  The Explanatory Note's exclusion of cut plant or fruit mixtures—such as the imported products—that are "consumed as such" reflects a specific intent to remove products similar to the fruit mixtures at issue—which undergo cutting and which can be consumed independently—from heading 2106. Appx29 (citing Appx189 (Pl.'s Resp. to Def.'s 56.3 Statement ¶ 11) (agreeing that consumers "eat [the mixtures] directly")); Appx188 (Pl.'s Resp. to Def.'s 56.3 Statement ¶ 5–8 (agreeing that "all of the fruit and vegetables in the products at issue arrive at plaintiff's packaging facility already cut and frozen")).  On this basis, the trial court correctly held that cutting and combining fruits and vegetables, which are "consumed as such," is not sufficient to turn these ingredients into a "food preparation."  Appx29.

The trial court also correctly held that freezing an otherwise excluded mixture of cut fruits and vegetables fails to turn it into a "food preparation."  *Id.*

As the trial court correctly noted, case law and the HTSUS distinguish between "prepared" foods and "frozen" foods. *Id.* In *Frosted Fruit Products Co. v. United States*, 18 Cust. Ct. 119 (1947), the Customs Court held that frozen guavas that had been trimmed, cleaned, and packed in boxes "are not 'prepared,' in a tariff sense" and declined to classify them as "guavas prepared or preserved." *Id.* at 121. That holding has been extended by the Court of International Trade. *See Interocean Chem. & Minerals Corp. v. United States*, 13 C.I.T. 449, 453 (1989) ("[I]t has been held that freezing, being a temporary preservation[,] is neither a preparation nor a preservation for tariff purposes."); *see also Crawfish Processors Alliance v. United States*, 30 C.I.T. 639, 645 (2006) (noting that "*Frosted Fruit* made it clear that more is necessary than freezing to make something prepared or preserved."). This concept is also reflected in the structure of the HTSUS itself. For example, Chapter 20, HTSUS covers "Preparations of vegetables, fruit, nuts or other parts of plants." The chapter excludes fruits and vegetables that have been "prepared or preserved by the processes specified in chapter 7, 8, or 11." Ch. 20, Note 1(a), HTSUS. Chapters 7 and 8 contain frozen fruit and vegetables; therefore, Chapter 20 should presumably exclude them if the HTSUS considers freezing a process to prepare or preserve. Yet Chapter 20 is filled with frozen products—for instance, heading 2008, which covers "Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen[.]" 2008, HTSUS. The HTSUS therefore

considers the condition of being frozen to be separate from the condition of being prepared or preserved. *See R.T. Foods*, 757 F.3d at 1356–57 (making the same observation concerning vegetables of Chapter 7).

As the trial court correctly held, the frozen fruit mixtures also fail to satisfy the test offered by *Orlando Food*, which held that "[i]nherent in the term 'preparation' is the notion that the object involved is destined for a specific use." Appx 30; 140 F.3d at 1441 (classifying tomato sauce base in heading for "sauces and preparations therefor"). The undisputed facts show that (1) all of the products at issue "can be used for many purposes" and may be "eat[en] directly," (2) "[n]ew applications for the products at issue may be developed based on customer usage," and (3) Nature's Touch "seeks to provide customers with a wide range of possible end uses for its products" but "does not know how a customer will ultimately use the products at issue." Appx30 (citing Appx189 (Pl.'s Resp. to Def.'s 56.3 Statement, ¶¶ 9–13)). But products that can be used for many purposes are, by definition, not "destined for a specific use." *See Orlando Food*, 140 F.3d at 1441. Therefore, for this additional reason, the imported frozen fruit mixtures cannot be classified under heading 2106.

The trial court did not err in applying the law to the undisputed facts to conclude that the frozen fruit mixtures are specifically excluded by the language of Explanatory Note 21.06 (15) and do not qualify as "food preparations." Appx31.

The trial court's opinion is also consistent with prior cases that have recognized that "freezing" food does not qualify as "food preparation." *See* Appx29-31. As such, the trial court correctly held that the frozen fruit mixtures cannot be classified as "food preparations" under heading 2106. Appx31.

Finally, the language of heading 2106 specifically excludes food preparations that are "specified or included" in other headings, such as heading 0811. *See* Appx17. Because, as explained *supra* in Sections III and IV, the frozen fruit mixtures are "specified or included" in heading 0811 ("Fruit . . . frozen"), they cannot be classified under heading 2106, which is a basket provision. *See id.*

## VI. The Trial Court Correctly Denied Duty-Free Treatment For The Subject Merchandise Pursuant To NAFTA

Nature's Touch argues that "to the extent the imported frozen fruit mixtures are properly classified under subheading 2106.90.98, HTSUS, they also qualify as 'originating' articles of Canada pursuant to NAFTA[,]" such that duty-free treatment applies to them. Blue Br. 39. However, because the frozen fruit mixtures are properly classified under subheading 0811.90.80, HTSUS, no shift into heading 2106 from another HTSUS chapter occurred, such that the goods are ineligible for duty-free treatment under NAFTA, as the trial court correctly concluded. *See* Appx45-46.

However, even if the Court were to determine that the products at issue are classifiable in Heading 2106, HTSUS (which it should not), the products are still

not entitled to preferential tariff treatment under NAFTA.  To be eligible for tariff preferences under NAFTA, the products must be "goods originating in the territory of a NAFTA party," meaning goods that originate in Canada, Mexico, and/or the United States.  General Note (GN) 12(b), HTSUS.  Goods may qualify as "originating goods" by application of the so-called "tariff shift rule" in GN 12(t).  As is relevant here, the tariff-shift rules require "all non-originating materials [to] undergo a change in classification as follows:  A change to heading 2106 from any other chapter."  GN 12(t) Chapter 21 (14).  Thus, merchandise that undergoes a tariff change to heading 2106, HTSUS, from another chapter will be granted duty-free treatment.

Nature's Touch claims that all the ingredients in the imported products "undergo a change from Chapter 8, HTSUS, classifications to Heading 2106, HTSUS."  Blue Br. 39.  Nature's Touch further explains that "all of the constituent ingredients imported into Canada in frozen condition would have been classifiable under Heading 0811, HTSUS."  *Id.*

Demonstrating that goods originate in a NAFTA country (or qualify as originating goods pursuant to the "tariff shift rule" described above) is only one requirement for preferential tariff treatment under NAFTA.  In addition to this requirement, goods must also qualify to be marked as goods of Canada, Mexico, or the United States (here, Canada).  GN 12(a)(i), 12(b); *see also* 19 C.F.R. § 102.

Moreover, the Preference Override rule, which allows a good to be considered a good of a NAFTA country if it is considered originating, does not apply here.[5] The Preference Override Rule only applies if more than "minor processing" occurs in a NAFTA country, as defined in 19 C.F.R. § 102.1(n).

Here, Nature's Touch cannot demonstrate that more than "minor processing" occurred in a NAFTA country, *i.e.*, in Canada. The definition of "minor processing" includes "sorting," "putting up in measured doses," and "packaging." 19 C.F.R. §§ 102.1(n)(6) and (7). These are the exact types of minor processing steps undertaken in Nature's Touch's packing facility in Canada. *See* Appx150 (Pl.'s Facts ¶¶ 4-7) (raw ingredients are sorted, combined in specific proportions, and packaged in retail bags). As such, Nature's Touch has not shown that the products at issue could be marked, properly, as products of Canada. Accordingly, even if the products at issue are classifiable as "food preparations not elsewhere specified or included" under heading 2106, HTSUS (contrary to our position), thereby satisfying the required shift in tariff rendering them "originating goods" for

---

[5] In addition, upon making a NAFTA preference claim for duty-free treatment pursuant to the Preference Override rule, 19 C.F.R. § 102 instructs an importer to first demonstrate that it has not satisfied the Marking Rules under §§ 102.11(a) or (b). Nature's Touch has not made this threshold demonstration, and therefore it cannot proceed directly to the Preference Override rule.

NAFTA purposes, Nature's Touch is still not entitled to preferential tariff treatment under NAFTA because the additional marking requirement has not been met.

For all the foregoing reasons, the imported products do not qualify for preferential treatment under NAFTA.

## **CONCLUSION**

For the foregoing reasons, we respectfully request that the Court affirm the judgment below.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:     /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*:                     /s/ Brandon A. Kennedy
Fariha Kabir                      BRANDON A. KENNEDY
General Attorney                  Trial Attorney
Office of Assistant Chief Counsel  Civil Division, U.S. Dept. of Justice
International Trade Litigation     Commercial Litigation Branch
U.S. Customs and Border Protection 26 Federal Plaza, Room 346
New York, New York 10278          New York, New York 10278
                                  Tel.: (212) 264-9230

*Attorneys for Defendant-Appellee*

Dated:  November 21, 2023
New York, New York

# ADDENDUM

## Chapter 8

### Edible fruit and nuts; peel of citrus fruit or melons

**Notes.**

1.- This Chapter does not cover inedible nuts or fruits.

2.- Chilled fruits and nuts are to be classified in the same headings as the corresponding fresh fruits and nuts.

3.- Dried fruit or dried nuts of this Chapter may be partially rehydrated, or treated for the following purposes :

(a) For additional preservation or stabilisation (for example, by moderate heat treatment, sulphuring, the addition of sorbic acid or potassium sorbate),

(b) To improve or maintain their appearance (for example, by the addition of vegetable oil or small quantities of glucose syrup),

provided that they retain the character of dried fruit or dried nuts.

### GENERAL

This Chapter covers fruit, nuts and peel of citrus fruit or melons (including watermelons), generally intended for human consumption (whether as presented or after processing). They may be fresh (including chilled), frozen (whether or not previously cooked by steaming or boiling in water or containing added sweetening matter) or dried (including dehydrated, evaporated or freeze-dried); **provided** they are unsuitable for immediate consumption in that state, they may be provisionally preserved (e.g., by sulphur dioxide gas, in brine, in sulphur water or in other preservative solutions).

The term "chilled" means that the temperature of a product has been reduced, generally to around 0 °C, without the product being frozen. However, some products, such as melons and certain citrus fruit, may be considered to be chilled when their temperature has been reduced to and maintained at + 10 °C. The expression "frozen" means that the product has been cooled to below the product's freezing point until it is frozen throughout.

Fruit and nuts of this Chapter may be whole, sliced, chopped, shredded, stoned, pulped, grated, peeled or shelled.

It should be noted that homogenisation, by itself, does not qualify a product of this Chapter for classification as a preparation of Chapter 20.

The addition of small quantities of sugar does not affect the classification of fruit in this Chapter. The Chapter also includes dried fruit (e.g., dates and prunes), the

exterior of which may be covered with a deposit of dried **natural** sugar thus giving the fruit an appearance somewhat similar to that of the crystallised fruit of heading 20.06.

However, this Chapter **does not cover** fruit preserved by osmotic dehydration. The expression "osmotic dehydration" refers to a process whereby pieces of fruit are subjected to prolonged soaking in a concentrated sugar syrup so that much of the water and the natural sugar of the fruit is replaced by sugar from the syrup. The fruit may subsequently be air-dried to further reduce the moisture content. Such fruit is classified in **Chapter 20 (heading 20.08)**.

This Chapter also **excludes** a number of vegetable products more specifically covered in other Chapters even though botanically some of them are fruits, e.g. :

(a)    Olives, tomatoes, cucumbers, gherkins, marrows, pumpkins, aubergines (egg-plant), fruits of the genus *Capsicum* or of the genus *Pimenta* (**Chapter 7**).

(b)    Coffee, vanilla, juniper berries and other products of **Chapter 9**.

(c)    Ground-nuts and other oleaginous fruit, fruit used primarily in pharmacy or in perfumery, locust beans, kernels of apricots or of similar fruit (**Chapter 12**).

(d)    Cocoa beans (**heading 18.01**).

The Chapter further **excludes :**

(i)    Fruit flour, meal and powder (**heading 11.06**).

(ii)    Edible fruit and nuts and peel of melons or citrus fruit, prepared or preserved otherwise than as described above (**Chapter 20**).

(iii)    Roasted fruit and nuts (e.g., chestnuts, almonds and figs), whether or not ground, generally used as coffee substitutes (**heading 21.01**).

It should be noted that fruit and nuts of this Chapter remain classified here even if put up in airtight packings (e.g., dried prunes, dried nuts in cans). In most cases, however, products put up in these packings have been prepared or preserved otherwise than as provided for in the headings of this Chapter, and are therefore **excluded (Chapter 20)**.

Products of this Chapter remain classified here (e.g., fresh strawberries) when subjected to packaging by means of a Modified Atmospheric Packaging (MAP) process. In a MAP process the atmosphere surrounding the product is altered or controlled (e.g., by removing or reducing the oxygen content and replacing it with or increasing the nitrogen or carbon dioxide content).

**08.11 - Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter.**

0811.10 - Strawberries

0811.20 - Raspberries, blackberries, mulberries, loganberries, black, white or red currants and gooseberries

0811.90 - Other

This heading applies to frozen fruit and nuts which, when fresh or chilled, are classified in the preceding headings of this Chapter. (As regards the meanings of the expressions "chilled" and "frozen", see the General Explanatory Note to this Chapter.)

Fruit and nuts which have been cooked by steaming or boiling in water before freezing remain classified in this heading. Frozen fruit and nuts cooked by other methods before freezing are **excluded** (**Chapter 20**).

Frozen fruit and nuts to which sugar or other sweetening matter has been added are also covered by this heading, the sugar having the effect of inhibiting oxidation and thus preventing the change of colour which would otherwise occur, generally on thawing out. The products of this heading may also contain added salt.

**21.06 - Food preparations not elsewhere specified or included.**

    2106.10 - Protein concentrates and textured protein substances

    2106.90 - Other

**Provided that they are not covered by any other heading of the Nomenclature,** this heading covers :

(A)  Preparations for use, either directly or after processing (such as cooking, dissolving or boiling in water, milk, etc.), for human consumption.

(B)  Preparations consisting wholly or partly of foodstuffs, used in the making of beverages or food preparations for human consumption. The heading includes preparations consisting of mixtures of chemicals (organic acids, calcium salts, etc.) with foodstuffs (flour, sugar, milk powder, etc.), for incorporation in food preparations either as ingredients or to improve some of their characteristics (appearance, keeping qualities, etc.) (see the General Explanatory Note to Chapter 38).

    However, the heading **does not cover** enzymatic preparations containing foodstuffs (e.g., meat tenderisers consisting of a proteolytic enzyme with added dextrose or other foodstuffs). Such preparations fall in **heading 35.07 provided** that they are not covered by a more specific heading in the Nomenclature.

The heading includes, *inter alia* :

(1)  Powders for table creams, jellies, ice creams or similar preparations, whether or not sweetened.

    Powders based on flour, meal, starch, malt extract or goods of headings 04.01 to 04.04, whether or not containing added cocoa, fall in **heading 18.06** or **19.01** according to their cocoa content (see the General Explanatory Note to Chapter 19). The other powders are classified in **heading 18.06** if they contain cocoa. Powders which have the character of flavoured or coloured sugars used as sweetener fall in **heading 17.01** or **17.02** as the case may be.

(2)  Flavouring powders for making beverages, whether or not sweetened, with a basis of sodium bicarbonate and glycyrrhizin or liquorice extract (sold as "Cocoa-powder").

(3)  Preparations based on butter or other fats or oils derived from milk and used, e.g., in bakers' wares.

(4)  Pastes based on sugar, containing added fat in a relatively large proportion and, sometimes, milk or nuts, not suitable for transformation directly into sugar confectionery but used as fillings, etc., for chocolates, fancy biscuits, pies, cakes, etc.

(5)  Natural honey enriched with bees' royal jelly.

(6)  Protein hydrolysates consisting mainly of a mixture of amino-acids and sodium chloride, used in food preparations (e.g., for flavouring); protein concentrates obtained by the elimination of certain constituents of defatted soya-bean flour, used for protein-enrichment of food preparations; soya-bean flour and other protein substances, textured. However, the heading **excludes** non-textured defatted soya-bean flour, whether or not fit for human consumption (**heading 23.04**) and protein isolates (**heading 35.04**).

(7)  Non-alcoholic or alcoholic preparations (**not based** on odoriferous substances) of a kind used in the manufacture of various non-alcoholic or alcoholic beverages. These preparations can be obtained by compounding vegetable extracts of heading 13.02 with lactic acid, tartaric acid, citric acid, phosphoric acid, preserving agents, foaming agents, fruit juices, etc.  The preparations contain (in whole or in part) the flavouring ingredients which characterize a particular beverage.  As a result, the beverage in question can usually be obtained simply by diluting the preparation with water, wine or alcohol, with or without the addition, for example, of sugar or carbon dioxide gas.  Some of these products are specially prepared for domestic use; they are also widely used in industry in order to avoid the unnecessary transport of large quantities of water, alcohol, etc. As presented, these preparations are not intended for consumption as beverages and thus can be distinguished from the beverages of Chapter 22.

The heading **excludes** preparations of a kind used for the manufacture of beverages, based on one or more odoriferous substances (**heading 33.02**).

(8)  Edible tablets with a basis of natural or artificial perfumes (e.g., vanillin).

(9)  Sweets, gums and the like (for diabetics, in particular) containing synthetic sweetening agents (e.g., sorbitol) instead of sugar.

(10) Preparations (e.g., tablets) consisting of saccharin and a foodstuff, such as lactose, used for sweetening purposes.

(11) Autolysed yeast and other yeast extracts, products obtained by the hydrolysis of yeast. These products cannot provoke fermentation and they have a high protein value. They are used mainly in the food industry (e.g., for the preparation of certain seasonings).

(12) Preparations for the manufacture of lemonades or other beverages, consisting, for example, of :

-   flavoured or coloured syrups, being sugar solutions with natural or artificial substances added to give them the flavour of, for example, certain fruits or plants (raspberry, blackcurrant, lemon, mint, etc.), whether or not containing added citric acid and preservatives;

-   syrup flavoured with an added compound preparation of this heading (see paragraph (7) above) containing, in particular, either cola essence and citric acid, coloured with caramelised sugar, or citric acid and essential oils of fruit (e.g., lemon or orange);

- syrup flavoured with fruit juices which have been modified by the addition of constituents (citric acid, essential oil extracted from the fruit, etc.) in such quantities that the balance of the fruit juice constituents as found in the natural juice is clearly upset;

- concentrated fruit juice with the addition of citric acid (in such a proportion that the total acid content is appreciably greater than that of the natural juice), essential oils of fruit, synthetic sweetening agents, etc.

Such preparations are intended to be consumed as beverages after simple dilution with water or after further treatment. Certain preparations of this kind are intended for adding to other food preparations.

(13) Mixtures of ginseng extract with other ingredients (e.g., lactose or glucose) used for the preparation of ginseng "tea" or beverage.

(14) Products consisting of a mixture of plants or parts of plants (including seeds or fruits) of different species or consisting of plants or parts of plants (including seeds or fruits) of a single or of different species mixed with other substances such as one or more plant extracts, which are not consumed as such, but which are of a kind used for making herbal infusions or herbal "teas", (e.g., those having laxative, purgative, diuretic or carminative properties), including products which are claimed to offer relief from ailments or contribute to general health and well-being.

The heading **excludes** products where an infusion constitutes a therapeutic or prophylactic dose of an active ingredient specific to a particular ailment (**heading 30.03** or **30.04**).

The heading also **excludes** such products classifiable in **heading 08.13** or **Chapter 9**.

(15) Mixtures of plants, parts of plants, seeds or fruit (whole, cut, crushed, ground or powdered) of species falling in different Chapters (e.g., Chapters 7, 9, 11, 12) or of different species falling in heading 12.11, not consumed as such, but of a kind used either directly for flavouring beverages or for preparing extracts for the manufacture of beverages.

However, products of this type whose essential character is given by their content of species falling within Chapter 9 are **excluded** (**Chapter 9**).

(16) Preparations, often referred to as food supplements or dietary supplements, consisting of, or based on, one or more vitamins, minerals, amino acids, concentrates, extracts, isolates or the like of substances found within foods, or synthetic versions of such substances, put up as a supplement to the normal diet. It includes such products whether or not also containing sweeteners, colours, flavours, odoriferous substances, carriers, fillers, stabilisers or other technical aids. Such products are often put up in packaging with indications that they maintain general health or well-being, improve athletic performance,

prevent possible nutritional deficiencies or correct sub-optimal levels of nutrients.

These preparations do not contain a sufficient quantity of active ingredients to provide therapeutic or prophylactic effect against diseases or ailments other than the relevant nutritional deficiencies. Other preparations with a sufficient quantity of active ingredient to provide a therapeutic or prophylactic effect against a specific disease or ailment are **excluded** (**heading 30.03** or **30.04**).

(17) Preparations in the form of granules or powders consisting of sugar, flavouring or colouring matter (e.g., plant extracts or certain fruits or plants such as orange, blackcurrant, etc.), antioxidants (e.g., ascorbic acid or citric acid or both), preserving agents, etc., of a kind used for making beverages. However, preparations which have the character of sugar fall in **heading 17.01** or **17.02**, as the case may be.

The heading further **excludes** :

(a) Preparations made from fruit, nuts or other edible parts of plants of heading 20.08, **provided** that the essential character of the preparations is given by such fruit, nuts or other edible parts of plants (**heading 20.08**).

(b) Micro-organisms of heading 21.02 put up as food supplements for human consumption (**heading 21.02**).

(c) Preparations containing cocoa, put up as food supplements for human consumption (**heading 18.06**).

## <u>CERTIFICATE OF SERVICE</u>

I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Brandon A. Kennedy

Dated:  November 21, 2023
      New York, New York

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FEDERAL CIRCUIT RULE 32(b)(3)**

I, Brandon A. Kennedy, a trial attorney in the Office of the Assistant

Attorney General, Civil Division, Commercial Litigation Branch, International

Trade Field Office, who is responsible for the foregoing brief, relying upon the

word count feature of Microsoft Word, the word processing program used to

prepare the brief, certify that this brief complies with the type-volume limitation

under Fed. R. App. P. 32(a)(7)(B), and contains 9,332 words.


/s/ Brandon A. Kennedy