**2023-2093**

# United States Court of Appeals
# for the Federal Circuit

---

**NATURE'S TOUCH FROZEN FOODS (WEST) INC.,**

Plaintiff-Appellant,

*v.*

**UNITED STATES,**

Defendant-Appellee.

---

Appeal from the United States Court of International Trade, Court
No. 20-cv-00131, Judge Stephen Alexander Vaden

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT, NATURE'S
TOUCH FROZEN FOODS (WEST) INC.**

---

John M. Peterson
  *Counsel of Record*
Patrick B. Klein
NEVILLE PETERSON LLP
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Ste. 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

January 11, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-2093

**Short Case Caption** Nature's Touch Frozen Foods (West) Inc. v. US

**Filing Party/Entity** Nature's Touch Frozen Foods (West) Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/13/2023

Signature: /s/ John M. Peterson

Name: John M. Peterson

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Nature's Touch Frozen Foods (West) Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)   ☐   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS..............................................................................i

TABLE OF AUTHORITIES ................................................................... ii

ARGUMENT ........................................................................................2

I.    The Trade Court Erred in Determining that Subheading 0811.90.80, HTSUS, Covers "Mixtures" of Frozen Fruits. ................................................2

II.   The Subject Frozen Fruit Mixtures are Properly Classified as "Other" Food Preparations of Subheading 2106, HTSUS. ....................................11

III.  The Subject Frozen Fruit Mixtures Qualify for Duty-Free Entry as NAFTA Originating ........................................................................................18

CONCLUSION ......................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Anheuser-Busch Brewing Assn. v. United States*, 227 U.S. 544 (1908) ................16

*Arbor Foods Inc. v. United States*, 30 C.I.T. 670 (2006) ........................15

*Arthur v. Lahey*, 96 U.S. 112  (1877). ........................................5

*Atlanta Trading Corp. v. United States*, 42 C.C.P.A. 90 (1954) ...........11

*BASF Inc. v. United States*, 482 F.3d 1324 (Fed. Cir, 2007)................14

*Brennan v. United States*, 136 F. 743 (1sr Cir. 1905) ........................4

*Brown & Co v. United States*, 6 Ct. Cust. App. 415 (1915) ...................... 3, 4, 5, 11

*CamelBak Prods., LLC v. United States*, 649 F.3d 1361  (Fed. Cir. 2011)............12

*Frosted Fruit Products v. United States*, 18 Cust. Ct. 119 (1947) ................. 17, 18

*GRK Canada Ltd. v. United States*, 180 F. Supp. 3d 1260 (Ct. Int'l Tr. 2016) ......10

*Homer v. The Collector*, 68 U.S. 486 (1864)................................5

*Interocean Chem. & Minerals Corp. v. United States*, 13 C.I.T. 449 (1989) .........18

*Lemans Corp. v. United States*, 660 F.3d 1311 (Fed. Cir. 2011). .........................12

*Magid Glove & Safety Mfg. Inc. v. United States*, 2023 U.S. App. LEXIS 32160 (Fed. Cir. 2023) ................................................12

*Maxcell Bioscience Inc. v. United States*, 31 C.I.T. 1999 (2007)...........................13

*Midwest of Cannon Falls Inc. v. United States*, 122 F.3d 1423 (Fed. Cir. 1997)........................................................17

*Mita Copystar Am. v. United States*, 160 F.3d 710 (Fed. Cir. 1998) ....................12

*Movius v. Arthur*, 95 U.S. 144 (1877) ...........................................5

*Nutricia N. Am. v. United States*, 2023 Ct. Intl. Trade LEXIS 172 (2023) ............15

*R.T. Food, Inc. v. United States*, 36 C.I.T. 1637 (2012)................................12

*R.T. Foods, Inc. v. United States*, 757 F.3d 1349 (Fed. Cir. 2014) ................. 12, 13

*Reiche v. Smythe*, 80 U.S. 162 (1872) ........................................5

*Rich v. United States*, 61 F. 501 (2nd Cir. 1894) ........................................4

*Schade & Co. v. United States*, 5 Ct. Cust. Appls. 465 (1914) ...............11

*Smythe v. Fiske*, 90 U.S. 374 (1874)................................................5

*Toy Biz Inc. v. United States*, 248 F. Supp. 2d 1234 (Ct. Int'l Tr. 2003) ...............10

*United States v. Alltransport Inc.*, 44 C.C.P.A. 149  (1957) ........................11

*United States v. Arnold Pickle & Olive Co.*, 68 C.C.P.A. 85 (1981) ....................15

*United States v. Border Brokerage Co.*, 54 C.C.P.A. 56 (1969). .........................15

*United States v. Gibson-Thomsen Co. Inc.*, 27 C.C.P.A. 267 (1940).....................16

*United States v. Reiss & Brady,* 136 F. 741 (2nd Cir. 1905) ....................4

**Treatises**

*R. Sturm, Customs Law and Administration* (3d ed. 1982) ........................3

**2023-2093**

# United States Court of Appeals for the Federal Circuit

---

### NATURE'S TOUCH FROZEN FOODS (WEST) INC.,
Plaintiff-Appellant,

*v.*

### UNITED STATES,
Defendant-Appellee.

---

Appeal from the United States Court of International Trade, Court No. 20-cv-00131, Judge Stephen Alexander Vaden

---

### REPLY BRIEF OF PLAINTIFF-APPELLANT NATURE'S TOUCH FROZEN FOODS (WEST) INC.

Plaintiff-Appellant, Nature's Touch Frozen Foods (West) Inc., ("Nature's Touch"), in accordance with Rules 28(a) and 32(a) of the Federal Rules of Appellate Procedure and the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, hereby submits its reply brief in this appeal.

## **ARGUMENT**

I.    **The Trade Court Erred in Determining that Subheading 0811.90.80, HTSUS, Covers "Mixtures" of Frozen Fruits.**

The central fallacy of the government's argument – and the critical flaw in the Trade Court's reasoning – is that the word "fruit"—as it appears in Heading 0811, HTSUS—is an *eo nomine* provision of the tariff. According to the government, the term "fruit" is an *eo nomine* provision which must be interpreted to include all types of fruit, including "mixed fruit," Government's Brief ("Gov't Br.") at 16, which the Trade Court classified in the "other" frozen fruit provision of subheading 0811.90.80, HTSUS. The Trade Court's reasoning, adopted in the government's brief,[1] is that only the term "other" in subheading 0811.90.80, HTSUS, "describes the products in whole." *Id.* at 23. The government also defends the Trade Court's holding that the plain meaning of the term "other" is "none of the above," Gov't Br. at 9, even though this definition would allow the term "other" to be oddly defined as either "some of the above," or "all of the above."

First, the term "fruit" as used in Heading 0811, HTSUS, is not an *eo nomine* description—it is a general description for a class of articles. As noted in *R. Sturm*,

---

[1] Before the Trade Court, the government argued forcefully that the "other" frozen fruits provision of subheading 0811.90.80, HTSUS, *did not cover mixtures*. *See* Appx134. Now, before this Court, however, the government withdraws that argument and now submits that the CIT's interpretation of "other" is reasonable and supported by law. Gov't Br. at 23, n.4.

*Customs Law and Administration* § 53.1 General Description (3d ed. 1982),[2] "[t]he **broadest classification** is that in **generic terms or words of general description**, such as fish, **fruit**, beans, wheat, manufactures of a material." (Emphasis added).

More than a century ago, the courts recognized that, in interpreting tariff statutes:

> The principle is well established that in determining the classification of goods an *eo nomine* designation must, unless a legislative intent to the contrary is clearly indicated, be preferred to terms of general description and to enumerations which are broader in scope and less specific. *Arthur v. Lahey,* (96 U.S. 112, 113, 24 L.Ed 766); *Vietor v. Arthur*, (104 U.S. 498, 499, 26 L.Ed. 633; *Robertson v. Glendenning*, (132 U.S. 158, 159, 33 L.Ed. 298, 10 S.Ct. 44); *Chew Hing Lung v. Wise*, (176 U.S. 156, 160, 44 L.Ed. 412, 20 S.Ct. 320).

*Brown & Co v. United States*, 6 Ct. Cust. App. 415, 417 (1915). In *Brown*, the question was whether imported soya beans were properly classifiable under a general dutiable provision covering "[B]eans, prepared or preserved, in tins, jars bottles or similar packages," or under a free list provision covering "Soya beans." The court rejected the government's argument that the term "soya beans' should be limited to fresh or unpackaged soya beans, noting that:

> … a person ordering soya beans from a seed house would hardly expect to receive merchandise of the kind imported. On the other hand, it

---

[2] The *Sturm* treatise further notes that "Merchandise is designated and classified in tariff acts in various ways; In general terms or words of general description; *eo nomine*; by its own specific name; according to use; and by composition." *R. Sturm*, *Customs Law and Administration* § 53 Types of Tariff Classification (3d ed. 1982).

> is equally true that the importation might well be regarded as a proper delivery of soya beans ordered for use as food.

*Id.* at 416. Absent a contrary legislative intent, the *eo nomine* term "soya beans" was interpreted to cover all forms of the named article. *Id* at 418.

In the process, the *Brown* court distinguished several earlier decisions in which a *classification by general description* had prevailed over a more specific *eo nomine* provision, noting that in each of the cases cited, a commercial designation had removed the imported good from the scope of the proffered *eo nomine* classification. *See e.g., Rich v. United States*, 61 F. 501 (2ⁿᵈ Cir. 1894) (holding that the imported goods were commercially known as "artists colors in tubes" and that the competing *eo nomine* provisions covered different commercial articles); *United States v. Reiss & Brady,* 136 F. 741 (2ⁿᵈ Cir. 1905) (figs preserved in sugar or molasses or in their own juices flavored with maraschino were more properly classified in a general provision for "[f]ruits preserved in sugar, molasses, spirits or in their own juices" because the term "figs" had been limited by judicial interpretation to mean dried figs sold in baskets and boxes); *Brennan v. United States*, 136 F. 743 (1sr Cir. 1905) (limes in brine classified in general provision because limes in brine were commercially considered to be "pickles," not "limes").

4

Consequently, the *Brown* court noted, "in those cases, it is not a question of whether the *eo nomine* designation should be preferred to terms of general description, but whether the *eo nomine* designation as used in the tariff act and understood in commerce was applicable to the merchandise." 6 Ct. Cust. App. at 419.

Likewise, the Supreme Court has recognized that "[w]hen Congress has designated an article by a specific name, and by such name imposed a duty upon it, general terms in a subsequent act, or in a later part of the same act, although sufficiently broad to comprehend such article, are not applicable to it. *Arthur v. Lahey*, 96 U.S. 112, 113 (1877). *See e.g., Homer v. The Collector*, 68 U.S. 486 (1864); *Reiche v. Smythe*, 80 U.S. 162 (1872); *Smythe v. Fiske*, 90 U.S. 374 (1874); *Movius v. Arthur*, 95 U.S. 144 (1877).

In this case, the Trade Court's decision, and the government's defense of same, rest on the proposition that all ingredients of plaintiff's frozen fruit mixtures answer to the general descriptive language "Fruit … frozen" in HTSUS Heading 0811, and that only subheading 0811.90, HTSUS "describes the products in whole." Appx43; Gov't Br. at 23. But this formulation ignores the fact that Heading 0811 also features subheadings which, at the six-digit "international" level and eight-digit "national tariff rate" level provide for specific fruits *eo nomine*. Indeed, the Trade Court's analysis utterly disregards these *eo nomine* provisions. The Heading and associated subheadings cover:

5

0811            Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter:

0811.10            Strawberries

0811.20            Raspberries, blackberries, mulberries, loganberries, black, white or red currants and gooseberries (other than kiwi fruit):

0811.20.20                Raspberries, loganberries, black currants and gooseberries (other than kiwi fruit)

0811.20.40                Other;

0811.90            Other:

0811.90.10                Bananas and plantains

0811.90.20                Blueberries

0811.90.22                Boysenberries

0811.90.25                Cashew apples, mameyes colorados, sapodillas, soursops and sweetsops

0811.90.30                Coconut meat

0811.90.35                Cranberries (Vaccinium macrocarpum)

0811.90.40                Papayas

0811.90.50                Pineapples

0811.90.52                Mangoes

0811.90.55                Melons

0811.90.80                Other

Bearing in mind the command of General Rule of Interpretation 6 to the HTSUS that only subheadings at the same level are comparable,[3] we compare the provisions in Heading 0811 to determine the meanings of six-digit subheading 0811.90, HTSUS, and eight-digit subheading 0811.90.80, HTSUS.

First, the "other" provision of subheading 0811.90, HTSUS, covers frozen fruits which are not strawberries (0811.10), and which are not raspberries, blackberries, mulberries, loganberries, black, white or red currants and gooseberries (other than kiwi fruit) (0811.20).

Second, the "other" provision of subheading 0811.90.80, HTSUS, covers fruits which are not the foregoing, and which are not bananas or plantains (0811.90.10), blueberries (0811.90.20), boysenberries (0811.90.22), Cashew apples, mameyes colorados, sapodillas, soursops and sweetsops (0811.90.25), coconut meat (0811.90.30), cranberries (0811.30.35), papayas (0811.90.40), pineapples (0811.90.50), mangoes (0811.90.52), or melons (0811.90).

---

[3] GRI 6 Provides in pertinent part: "For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, mutatis mutandis, to the above rules, on the understanding that only subheadings at the same level are comparable.

And although the Trade Court said that the term "other," as it appears in the tariff, means "none of the above," under its faulty logic, when two or more frozen fruits are imported together, the term "other" means ***some or all of the above.***

Under the Trade Court's logic, for example, Plaintiff's "frozen strawberry/banana" product, consisting of items not individually classifiable in subheading 0811.90.80, HTSUS, becomes classifiable in subheading 0811.90.80, HTSUS, when imported mixed. The strawberry ingredient, classified *eo nomine* in subheading 0811.10, HTSUS, now falls to be classified under subheading 0811.90, HTSUS. The blueberry component, classified *eo nomine* in subheading 0811.90.20, HTSUS, now falls to be classified under subheading 0811.90.80, HTSUS, a provision from which it is ordinarily excluded.  The Trade Court did not explain how the scope limitations of subheading 0811.90.80, HTSUS, magically fall away when products not covered therein are imported as part of a mixture.

The lower court's analytical error is in focusing on the general descriptive language "Fruit … frozen," in Heading 0811, and in construing subheading 0811.90.80, HTSUS, to "describe the products in whole," without taking account of the intervening *eo nomine* provisions set out in the 6-and-8 digit subheadings of the note. In so doing, the Trade Court disregarded General Rule of Interpretation 1 to the HTSUS, which provides that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter

8

notes"; and GRI 6, which requires that in construing subheadings, "[f]or legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above rules, on the understanding that only subheadings at the same level are comparable." In construing the scope of subheading 0811.90.80, HTSUS, in which it classified plaintiff's imported products, the Trade Court disregarded *eo nomine* provisions at the subheading level, instead making a leap from the 4-digit Heading language to the 8-digit subheading language.

Thus, products such as strawberries and raspberries, classified in subheadings 0811.10 and 0811.20, HTSUS, respectively, cannot be classified in the "other" subheading 0811.90, HTSUS. Product such as blueberries, classified in subheading 0811.90.20, HTSUS, cannot be classified in the "other" provision of subheading 0811.90.80, HTSUS. The scope of subheading 0811.90.80, HTSUS, is narrowed by the 6-and 8-digit subheadings which proceed it. The Trade Court's analysis expands the section, so that when goods are imported in mixtures, subheading 0811.90.80, HTSUS, *expands* to include all of the items excluded from its scope by the preceding 6- and 8-digit subheadings. This interpretation grossly disregards the commands of GRIs 1 and 6.

The Trade Court has previously noted that *eo nomine* tariff subheadings and "other" subheadings at the same level are "mutually exclusive." *Toy Biz Inc. v.*

*United States*, 248 F. Supp. 2d 1234 (Ct. Int'l Tr. 2003). It has similarly been noted that:

> … in most cases, two subheadings under the same heading in a chapter would necessarily be exclusive of each other as each would be defined not only by its own terms but also by what it is not as indicated in the other subheading's terms.

*GRK Canada Ltd. v. United States*, 180 F. Supp. 3d 1260, 1273 fn 22 (Ct. Int'l Tr. 2016), *aff'd*, 885 F.3d 1340 (Fed. Cir. 2018).

The Trade Court's approach here, however, would use the general descriptive language in Heading 0811 ("Fruit … frozen"), to completely swallow up and disregard the *eo nomine* provisions in the heading's 6- and 8-digit subheadings. It would disregard the fact that the scope of an "other" provision such as subheading 0811.90.80, HTSUS, is constrained by the language of superior and correlative subheadings, and reaches the absurd conclusion that subheading 0811.90.80, HTSUS, describes Plaintiff's imported frozen fruit mixtures "in whole"(Appx13) when in many cases, it describes few or *none* of the goods in the mixture. Such an interpretation cannot be squared with the commands of GRIs 1 and 6.

The drafters of the tariff did not provide that the General Rules of Interpretation go out the window when a mixture appears. Instead, they provided two ways for mixtures to be classified. Some mixtures, described explicitly by the terms of the tariff's headings and subheadings, are classified pursuant to GRI 1. When a mixture is not so described, the drafters of the tariff mandated classification of the mixture

as if it consisted solely of that material or ingredient which imparts its "essential character" GRI 3(b)) or, in the rare cases where no "essential character" component can be identified, according to the last tariff provision in numerical order which describes one of the ingredients (GRI 3(c)).

Classification of merchandise by general description must retreat in the face of applicable *eo nomine* provisions describing the goods in question. *See Brown & Co. v. United States*, 6 Cust. Ct. 415, 419 (1915); *Schade & Co. v. United States*, 5 Ct. Cust. Appls. 465, 466 (1914); *see also United States v. Alltransport Inc.*, 44 C.C.P.A. 149, 154 (1957); *Atlanta Trading Corp. v. United States*, 42 C.C.P.A. 90, 94 (1954). The Trade Court's decision classifying all of Plaintiff's imported mixed fruit preparations under subheading 0811.90.80, HTSUS, must be reversed, not only because it disregards this venerable maxim of tariff construction, but also the modern tools of construction provided in General Rules of Interpretation 1 and 6.

## II.    The Subject Frozen Fruit Mixtures are Properly Classified as "Other" Food Preparations of Subheading 2106, HTSUS.

Clearly, subheading 0811.90.80, HTSUS, does *not* cover frozen fruit mixtures. Expanding the scope of the provision in such a way would violate established maxims of statutory interpretation, and disregarded the interpretive guidance established in General Rules of Interpretation 1 and 6.  It is equally clear that if an imported product can be classified pursuant to GRI 1, it must be so classified before resort may be had to other GRIs. *See, e.g., Magid Glove & Safety Mfg. Inc. v. United*

11

*States*, 2023 U.S. App. LEXIS 32160 (Fed. Cir. 2023); *Lemans Corp. v. United States*, 660 F.3d 1311 (Fed. Cir. 2011).

In this regard, subheading 2106.90.98, HTSUS, is a provision covering "food preparations, not elsewhere specified or included." To be classified "under heading 2016, HTSUS, two criteria must be met: the product must be (1) a food preparation; which is (2) not elsewhere specified or included." *R.T. Food, Inc. v. United States*, 36 C.I.T. 1637, 1644 (2012), *aff'd*, 757 F.3d 1349 (Fed. Cir. 2014). As this Court has noted "Heading 2106, HTSUS ... is an **expansive basket heading** that only applies in the absence of another applicable heading." *Id*. (Emphasis added).

In the face of a classification provision which the Trade Court has found to be "expansive," a food preparation will fall to be classified in subheading 2106.90.98, HTSUS, unless a more specific provision can be located. As noted by this Court in *R.T. Foods,* "if the proper heading can be determined under GRI 1, the court is not to look to the subsequent GRIs." *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014); *see also, CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011) (citing *Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998) ("We apply GRI 1 as a substantive rule of interpretation, such that when an imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative."). *R.T. Foods, Inc. v. United States*, 757 F.3d 1353 (Fed. Cir.

12

2014). As demonstrated above, the instant fruit mixtures cannot be classified under subheading 0811.90.80, HTSUS. Neither the Trade Court, nor the government, offer any other possible GRI 1 classification for the imported product.

Defendant asserts that Plaintiff's frozen fruit mixtures are not "preparations" because they do not undergo some unspecified level of processing designed to render them more than mere "food." Gov't Br. at 31. The Trade Court has noted that "The term 'food preparation' as it is used in heading 2106 is not statutorily defined," and has looked to the Explanatory Notes for guidance. *Maxcell Bioscience Inc. v. United States*, 31 C.I.T. 1999, 2012 (2007). But while subheading 2106.90.98, HTSUS, clearly covers food preparations including non-food ingredients, nothing therein suggests that preparations consisting solely of foods are excluded therefrom. Nor does anything suggest that extensive processing must be done; a simple combination of goods to serve a specific need is sufficient.

Indeed, the Explanatory Notes to heading 2106, HTSUS, on which the government purports to rely states that:

> **Provided that they are not covered by any other heading of the Nomenclature,** this heading covers:
>
> (A) Preparations for use either directly or after processing (such as cooking, dissolving or boiling in water, milk, etc.), for human consumption.

(Emphasis in original). Thus, food preparations of Heading 2106 may be used "directly" (as a user might thaw the instant frozen fruit preparations for direct consumption); or "after processing" (which might occur post-importation, as when the user of an imported frozen fruit preparation might mix it with water or milk in a blender to make a fruit smoothie beverage). The instant mixtures have been "prepared" by being combined in definite proportions to specific taste or color palates, reduced in size in some instances, and packaged for use by the consumer. "Preparation" as used in Heading 2106 does not required that the goods be "manufactured" or transformed into something other than foods for human consumption. While subsection (B) of the Explanatory Note indicates that Heading 2106 also covers "Preparations consisting wholly or partly of foodstuffs" used for various purposes, nothing indicates that a "food preparation" of the Heading must be *more than* "food."

Thus, as noted in *BASF Inc. v. United States*, 482 F.3d 1324, 1329 (Fed. Cir, 2007):

> We addressed the meaning of "preparation" in *Orlando Food Corp. v. United States*, 140 F.3d 1437 (Fed. Cir. 1998), and stated that "[i]nherent in the term 'preparation' is the notion that the object involved is destined for a specific use. The relevant definition from the Oxford English Dictionary defines a 'preparation' as 'a substance specifically prepared, or made up for its appropriate use or application, e.g. as food or medicine, or in the arts or sciences.'" *Id*. at 1441 (citation omitted).

(Lourie, J., dissenting in part). The instant fruit products have been "prepared" by being reduced in size in certain cases, frozen, and combined according to recipes so

that they might be used to make fruit smoothies (the predominant use), or for dessert toppings, making jams, and similar purposes. *See* Appx70-Appx71, Appx130. The "preparation" is not the freezing, but rather the combination of fruits in distinct proportions to serve particular uses and please certain taste palates.[4]

The government notes that some of the ingredients of the subject mixtures are delivered to Plaintiff's Canadian factory "already cut and frozen" (Gov't Br. at 31), but this is of no moment. Goods are classified in their *condition as imported*. *See e.g.*, *United States v. Arnold Pickle & Olive Co.*, 68 C.C.P.A. 85 (1981); *United States v. Border Brokerage Co.*, 54 C.C.P.A. 56 (1969). The creation of the imported frozen fruit mixtures at bar involves many operations performed in different countries and in different plants—growing, harvesting, transporting, reduction in size, freezing and the like. It is not necessary that all of these operations be performed at the plant of the company which packages the goods for export to the United States. While the government asserts that, once frozen, the individual pieces of fruit undergo no further change in character" prior to importation (Gov't Br. at 31), this is not the

---

[4] The courts have not required that individual ingredients of a "food preparation" be enhanced in condition, or processed in any way other than by combining in established quantities. Thus, for example, in *Arbor Foods Inc. v. United States*, 30 C.I.T. 670 (2006), the Trade Court held that a mixture consisting 98% of sugar and 2% of gelatin was a "food preparation" of heading 2106, HTSUS.

More recently, in *Nutricia N. Am. v. United States*, 2023 Ct. Intl. Trade LEXIS 172 (2023), the Trade Court held that certain fortified beverages were also "food preparations" of Heading 2106.

test for being a "preparation." A change in character might be indicative of a process of manufacture—*see e.g.*, *Anheuser-Busch Brewing Assn. v. United States*, 227 U.S. 544, 556 (1908)—or of a "substantial transformation" for purposes of determining a goods' country of origin for marking purposes. *United States v. Gibson-Thomsen Co. Inc.*, 27 C.C.P.A. 267, 273 (1940). But it is in no way relevant to the determination of whether, in its condition as imported, an article is classifiable as a "food preparation."

The government also contends that because more thoroughly processed food preparations are included in Heading 2106, this suggests that the instant products are not classified therein. In particular, the government notes Explanatory Note 21.06 (15), which provides:

> This heading includes, *inter alia*;
>
> Mixtures of plants, parts of plants, seeds or fruit (whole, cut, crushed, ground or powdered) of species falling in different Chapters (e.g., Chapter 7, 9, 11, 12) or of different species falling in heading 12.11, not consumed as such but of a kind used either directly for flavoring beverages or for preparing extracts for the manufacture of beverages.
>
> However, products of this type whose essential character is given by their content of species falling within Chapter 9 are **excluded (Chapter 9).**

(Emphasis in original). From this, the government bizarrely posits that the Explanatory Note excludes "cut plant or fruit mixtures – such as the imported products – that

are 'consumed as such'." Gov't Br. at 33. But the Explanatory Note nowhere excludes from the scope of Heading 2106 food preparations "consumed as such." Section (A) of the Explanatory Note, referred to above, expressly includes within the scope of Heading 2106 food preparations designed to be "consumed directly."[5]

This Court has long warned against the impropriety of using exemplars from the Explanatory Notes to cabin the terms of the HTSUS headings and subheadings. *See e.g.*, *Midwest of Cannon Falls Inc. v. United States*, 122 F.3d 1423 (Fed. Cir. 1997). What the government seeks to do here, however, is to selectively refer to parts of an Explanatory Note, while disregarding others. This is improper interpretation and analysis of the Explanatory Notes.

Nor do the precedents cited by the government advance its position. In *Frosted Fruit Products v. United States*, 18 Cust. Ct. 119 (1947), the issue was whether certain frozen guavas were classified as "fruits in their natural state," or as fruits "preserved or prepared" under the language of certain trade agreements. The court noted that "'prepared" in a tariff sense means that a commodity has been so processed to be advanced in condition and more valuable for its intended use." *Id.*

---

[5] The only exclusionary language in Explanatory Note 20.16 (15) relates to preparations which derive their "essential character" from species classified in HTSUS Chapter 9. All of the components of the frozen fruit mixtures at issue, if imported individually, would be classified in HTSUS Chapter 8. The exclusion has no applicability here.

17

at 120. But this case involved a single fruit, not a combination of fruits prepared

pursuant a recipe, so the decision does not shed light on the instant question.

Similarly, *Interocean Chem. & Minerals Corp. v. United States*, 13 C.I.T. 449

(1989), involved the question of whether imported frozen crab meat and crab claws

should be classified as crabmeat "chilled or frozen" or as "crabmeat "preserved or

prepared." While noting that the provision for "chilled or frozen" crabmeat was not

fully descriptive of the imported merchandise, the Court held that the product did

not qualify as "preserved or prepared" due to a commercial designation. *Id.*

at 453-454. There is no commercial designation at issue in this action.

Pursuant to the command of GRI 1, in the absence of a provision which more

specifically describes them, the instant frozen fruit mixtures are properly classifiable

as "other" food preparations in the broad basket provision of subheading 2106.90.98,

HTSUS.

### III.  The Subject Frozen Fruit Mixtures Qualify for Duty-Free Entry as NAFTA Originating

To the extent the instant frozen fruit mixtures are properly classified under

subheading 2106.90.98, HTSUS, the instant fruit mixtures are eligible for duty free

treatment as "originating" products under the North American Free Trade Agree-

ment ("NAFTA").

Eligibility for duty free NAFTA treatment is generally determined according

to "tariff shift" rules of origin codified in General Note 12 of the Harmonized Tariff

Schedule. For goods classified under Heading 2106, HTSUS, the applicable rule of origin requires that, as a result of work performed in one or more NAFTA countries, a good undergoes "a change to heading 2106 from any other chapter" of the tariff. As all non-originating components of the Plaintiff's frozen fruit products are classified in chapters other than Chapter 21, HTSUS, the products will all qualify for duty-free entry under NAFTA, subject to satisfaction of certification and other requirements which are not in dispute in this action.

## <u>CONCLUSION</u>

For the reasons given above, Plaintiff-Appellant respectfully requests that this Court vacate the opinion and judgment of the CIT, and remand this matter for proceedings consistent with this Court's opinion.

Respectfully submitted.

/s/ John M. Peterson

John M. Peterson
  *Counsel of Record*
Patrick B. Klein
NEVILLE PETERSON LLP
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Ave, Ste. 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com
*Attorneys for Plaintiff-Appellant*

January 11, 2024

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing Reply Brief of Plaintiff -Appellant , Nature 's Touch Frozen Foods (West ) Inc ., complies with the relevant type -volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules. It was prepared using a propor- tionally-spaced typeface and includes 4,214 words.


    /s/ Patrick B. Klein
       Patrick B. Klein

January 11, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11st day of January 2024, I electronically filed the fore-going Reply Brief of Nature's Touch Frozen Foods (West) Inc., with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

        /s/ Patrick B. Klein
        Patrick B. Klein

January 11, 2024